WILLIAM D. ALEXANDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
ALEXANDER v. COMMISSIONER
Docket No. 5691-73.
United States Tax Court
T.C. Memo 1978-487; 1978 Tax Ct. Memo LEXIS 28; 37 T.C.M. (CCH) 1849-75; December 7, 1978, Filed *28 Held: amount of deductions allowable under section 162 determined. Held,further: amount of exclusion from income tax under section 911 determined: petitioner did not prove that he was a bona fide resident of a foreign country or that capital was not a material income-producing factor; further, amount of deductions excluded from section 162 under section 911(a) is determined from gross income, not net income, Brewster v. Commissioner,67 T.C. 352 (1976), followed. Held,further, negligence penalty is not warranted for 1968 but warranted for 1969. Joseph L. Gibson, for the petitioner. Steven J. Mopsick, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioner's income tax and penalties under section 6653(a) [1] as follows: Addition
to Tax Year
Deficiency
Sec. 6653(a)
1968
$ 34,456.13
$ 1,722.81
1969
20,264.70
1,013.24
The issues presented for our decision are: (1) Whether petitioner is entitled to deduct ordinary and necessary business expenses in excess of that allowed by respondent; (2) the amount of exclusion from income tax under section 911 to which petitioner is entitled; and (3) whether the negligence penalty was properly imposed. *31 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioner, William D. Alexander, filed his income tax return for the taxable year 1968 with the District Director of Internal Revenue, Baltimore, Maryland and his 1969 income tax return with the Internal Revenue Service Center, Philadelphia, Pennsylvania. Petitioner maintained an apartment and office in Lodon, England, during the years in issue and was present in foreign countries for at least 510 days of each 18-month period throughout the taxable years in issue. All of petitioner's income was earned from sources outside the United States but he did not pay income taxes to any foreign government. Petitioner received no income from the United States or any instrumentality thereof; all of his income was attributable to business activities performed during the period of time he was in foreign countries. However, petitioner returned to the United States to do work in connection with films he was producing for the governments of Liberia and Ethiopia. On his 1968 return, petitioner claimed a $25,000 exemption *32 from income under section 911(a)(2). He claimed a net operating loss in 1969 but nonetheless filed a Form 2555 "STATEMENT TO SUPPORT EXEMPTION OF INCOME EARNED ABROAD." For both years, he claimed the exemption on the basis of being "Physically present entire year [in foreign countries]." On his 1968 return, petitioner claimed business expenses of $147,221.54 of which respondent disallowed $45,544.16. [2] On his 1969 return, petitioner claimed business expenses of $136,028.53 of which respondent disallowed $68,347.58. This amount was obtained by taking petitioner's net profit percentage of 42.58 percent for 1968 and applying it to his 1969 gross income. *33 Petitioner is a film producer and consultant. He actually owned very little of the equipment he used, however, preferring instead to lease it. During 1968 and 1969, petitioner was employed to produce finished films on a free-lance basis and produced documentary films for the governments of Liberia and Ethiopia. Petitioner was responsible for hiring and providing food, shelter, and transportation for the various specialists (such as cameramen, soundmen, electricians, and staff people) necessary for production. These specialists would sometimes be given money by petitioner to pay their food and shelter expenses rather than petitioner paying such expenses personally. Petitioner would send to his accountant in the United States invoices and other slips of paper recording expenses and a book prepared in his London offices in which his expenses were recorded and itemized and converted into American dollars (since the expenses were generally incurred in foreign countries using foreign currency). [3] The accountant retained the invoices and slips of paper. He prepared tax returns from the book without attempting to reconcile the book with the invoices, however, due to his inability *34 to covert the receipts into American dollars. During the audit, the revenue agent met with petitioner's accountant or his assistant who furnished him with petitioner's records. These records for 1968 consisted of envelopes, marked by months, containing receipts and scrap pieces of paper. However, there were no journals or any type of work sheet provided for 1968. The agent attempted to classify the receipts into travel, entertainment, production costs, or other categories in order to reconcile petitioner's records with his return but was unable to do so. The accountant was also unwilling or unable to reconcile the figures provided by the receipts with the returns. The agent disallowed a deduction for those items which he determined were either not paid or were paid by someone other than petitioner. [4] The agent also disallowed all expenses incurred within the United States because he believed such expenses were personal. The adjustments in the notice *35 of deficiency reflect these disallowances. Petitioner's records for 1969 provided little information. The agent was never offered an account book or diary but a work sheet was prepared by petitioner's accountant. However, the work sheet did not reconcile with petitioner's return. In light of this, rather than use the same method for auditing petitioner's 1969 return as his 1968 return, *36 the agent simply applied petitioner's net profit percentage in 1968 to petitioner's 1969 gross income to determine the amount of allowable deductions in 1969. [5]
After audit of petitioner's records, the records were lost or destroyed in a fire and thus unavailable to provide further substantiation or independent review by this Court. Petitioner attempted to obtain copies of his contracts with the Liberian and Ethiopian governments to substantiate certain expenses but was unable to do so. OPINION Expenses
Respondent disallowed certain alleged expenditures incurred by petitioner in 1968 because he determined petitioner either did not substantiate that he actually incurred the expenses or because such expenses were not "ordinary and necessary" business expenses. The burden of proof is, of course, on petitioner to prove he both made the payments as claimed and that such payments *37 were ordinary and necessary expenses. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111 (1933). Respondent asks us to draw an inference that petitioner's records would not have supported petitioner's position because the records were "lost" after the initial audit and after they were determined to be inadequate by respondent, relying on Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158 (1946), affd. 162 F.2d 513 (10th Cir. 1946). Because petitioner satisfactorily explained the destruction of his records, however, no such adverse inference may be drawn. Alameda Realty Corporation v. Commissioner,42 T.C. 273 (1964). Cf. section 1.274-5 (c)(5), Income Tax Regs. Moreover, petitioner did, in fact, attempt to obtain corroborating evidence from the governments of Ethiopia and Liberia but was unable to do so. Petitioner had receipts, invoices, and scraps of paper indicating each expenditure which were recorded in his book (from which his accountant prepared the returns) and claimed as a deduction on his 1968 return. Many receipts were not "formal" because of the remoteness *38 and conditions in the areas of the world in which he worked. Petitioner was a credible witness and explained the business purpose for almost all items questioned as a personal expense by respondent. Although a few items were not explained adequately (not surprising in view of the eight or nine years elapsed until trial), there is no evidence that even suggests petitioner did not keep separate business expenses from personal expenses. [6]
We also believe petitioner actually incurred those expenses claimed for 1968. The expenses were listed in detail and the dates they were incurred were given for most. Petitioner was responsible *39 for hiring and providing food, shelter, and transportation for his crews and although the crews sometimes paid their own bills, they were reimbursed or advanced the funds by petitioner. In only one instance were petitioner's transportation, food, and lodging expenses paid for by a foreign government. Certain expenses were disallowed by respondent because receipts were marked "charge to Ethiopia" or "charge to Liberia." However, both petitioner and his accountant explained that receipts were marked in this way to provide them with a way of ascertaining costs of various projects. And although petitioner's accountant did not reconcile the invoices with petitioner's return, he testified it was impossible for him to do so because he was unable to convert the foreign currencies on the receipts to American dollars. We believe on these facts that petitioner has met his burden of proof for all deductions disallowed for 1968. For 1969, however, petitioner could not tie in various claimed deductions with any receipts or records. As such, presumably only general categories of expenses were listed on his book rather than the specific entries corroborated by receipts in 1968. Respondent, *40 therefore, determined the amount of petitioner's allowable deductions using petitioner's net profit percentage for 1968. Petitioner argues that respondent should have disallowed the same percentage of expenses in 1969 as was disallowed in 1968. [7]
We find that petitioner's records were never adequate for 1969. Under these circumstances, respondent is authorized to reconstruct petitioner's income using any reasonable method that clearly reflects income. Section 446. Cupp v. Commissioner,65 T.C. 68, 82 (1975), affd. 559 F.2d 1207 (3d Cir. 1977). No particular method is required since circumstances will vary in individual cases, Harbin v. Commissioner,40 T.C. 373, 377 (1963), and respondent is not compelled to compute income by several methods for the sake of corroboration if the method used produces a reasonably correct result. Gordon v. Commissioner,63 T.C. 51, 78 (1974), *41 affd. in part, revd. in part on other grounds 572 F.2d 193 (9th Cir. 1977), cert. denied 435 U.S. 924 (1978). There is nothing in the record which suggests petitioner's expenses incurred in 1969 to produce films (as a percentage of his gross) varied from those incurred in 1968. Accordingly, we hold that respondent is entitled to use the net profit percentage to determine the amount of expenses incurred in 1969. Cf. Stone v. Commissioner,22 T.C. 893 (1954). However, because we allowed certain claimed expenses in 1968 as deductions which respondent disallowed and, therefore, did not use in making his computations, petitioner's allowable expenses in 1969 should be recomputed using the new percentage figure. Section 911 Exclusion
Three separate questions are confronting us in determining the proper amount of the section 911 exclusion: (1) whether petitioner has met the bona fide resident of a foreign country requirement of section 911(a)(1) (thereby entitling him to the $25,000 exclusion of section 911(c)(1)(B)); [8] (2) whether capital was a "material income producing factor" for purposes of section 911(b) thereby limiting the amount *42 of "earned income" received by petitioner and excludable under section 911(a) to a maximum of 30 percent of net profits; and (3) whether respondent properly disallowed pursuant to section 911(a)(2) a pro rata portion of petitioner's business deductions attributable to the excluded amounts of income. Petitioner filed Forms 2555 "STATEMENT TO SUPPORT EXEMPTION OF INCOME EARNED ABROAD" with his 1968 and 1969 returns. Although the form for 1969 was not completed due to the claimed operating loss, line 2(b) of both forms was checked indicating petitioner's filing status was that of being physically present in foreign countries for 17 months of an 18-month period. Part II of both forms was filled out documenting petitioner's presence in England, Ethiopia and Liberia during the whole of each year in issue and during prior years back to 1961. Part I of each form, which must be filled out to support *43 a claim of bona fide residence, was left blank. Despite listing his filing status as physical presence for 17 months of an 18-month period, petitioner claimed a $25,000 exclusion for 1968 and makes a similar claim for 1969 if the Court finds that his net "earned income" equals or exceeds such amount. The only evidence in the record that even suggests petitioner was a bona fide resident of a foreign country is that he maintained an apartment and office in London, England, during the years in issue. This standing alone falls far short of the proof required to prove bona fide residence in England, especially in light of the Forms 2555 filed and his nonpayment of income taxes to any foreign country. See for example, Sochurek v. Commissioner,300 F.2d 34 (7th Cir. 1962), listing various factors to consider. The issue as to whether a trade or business is one in which both personal services and capital are material income-producing factors is largely factual in nature. If a substantial portion of a business's gross income is attributable to employment of capital or if the operation of the business requires substantial inventories or investments in plant, machinery *44 or other equipment, then capital is a material income-producing factor. On the other hand, if a business's gross income consists primarily of fees, commissions, or other compensation for personal services, or if capital is utilized merely to pay the cost of salaries, wages, office space, and general business expenses, then capital is not a material income-producing factor. Rousku v. Commissioner,56 T.C. 548 (1971). Based on the rather sparse record before us in regard to this issue, we believe that although substantial amounts of personal services were involved in petitioner's business, petitioner has failed to overcome respondent's determination that capital was a material income-producing factor. Although petitioner owned very little of the equipment used in his film productions, preferring instead to lease it, we note that leased equipment may constitute part of the capital employed in producing income and there are no facts in the record to suggest they should not constitute capital. Rousku v. Commissioner,supra;Graham Flying Service v. Commissioner,8 T.C. 557, 561 (1947), affd. 167 F.2d 91 (8th Cir. 1948), *45 cert. denied 335 U.S. 817 (1948); Fairfax Mutual Wood Products Co. v. Commissioner,5 T.C. 1279 (1945). It is clear that petitioner could not have produced his income without the capital needed for purchasing or leasing his equipment. Thus, the fact that petitioner owned little of the equipment used, on which he relies so heavily, is not significant of itself. Petitioner's failure to provide any testimony or evidence as to the amount of equipment used or its cost is, therefore, fatal to his contention. Moreover, petitioner has not shown that capital was utilized merely to pay salaries, wages, office space, and general business expenses as he contends. Cf. Ketter v. Commissioner,70 T.C. 637 (1978); Hartman v. Commissioner,43 T.C. 105 (1964). Section 911(a) provides, in part, that "an individual shall not be allowed as a deduction from his gross income any deductions * * * to the extent that such deductions * * * [are] properly allocable to or chargeable against amounts excluded from gross income under this subsection." Respondent computed the expenses allocable to excludable income and, therefore, nondeductible *46 as follows: [9]
Excludable Earned Income / Gross Income X Gross Expenses Petitioner contends that the amount of exclusion should be from net income, not gross income, and thus no portion of the deductions from gross income should have been disallowed. We have considered this contention three times and each time have held for respondent. Brewster v. Commissioner,67 T.C. 352 (1976), a Court reviewed decision, on appeal (D.C. Cir. Sept. 30, 1977); Brewster v. Commissioner,55 T.C. 251 (1970), affd. 473 F.2d 160 (D.C. Cir. 1972); Hempel v. Commissioner, a Memorandum Opinion of this Court dated June 23, 1947. Petitioner apparently concedes the case law is against him but urges us to reconsider our view. However, because appeal in this case would lie to the D.C. Circuit which affirmed the first Brewster case, we would nonetheless be *47 bound by that decision under the rule established in Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971). Negligence Penalty
Respondent imposed the negligence penalty pursuant to section 6653(a) because of petitioner's inadequate records, or more precisely, petitioner's failure to maintain records which substantiate his claimed business expenses. There is no claim that petitioner failed to properly report his gross income. We have allowed petitioner all of his claimed expenses for 1968 based upon the records shown respondent during the audit and his testimony at trial. Petitioner explained why his books were not those of the "ordinary businessman." We do not believe petitioner was negligent in 1968 in claiming any of the deductions which we disallowed for his failure to provide substantiation. For 1969, however, we found that petitioner did not maintain adequate books and records. No explanation was forthcoming by petitioner at trial for his lack of records for 1969. We hold that petitioner has not met his burden of proof on this issue and, therefore, sustain the imposition of the section 6653(a) penalty for 1969. *48 Decision will be entered under Rule 115.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the years at issue.↩
2. ↩ Description
Date
Amount
Ducor International
2/ 9/68 $ 3.09
2/ 9/68
1,045.00
2/17/68
2,000.00
2/16/68
100.00
4/11/68
379.78
7/31/68
1,500.00
10/19/68
500.00
10/13/68
500.00
10/15/68
500.00
Travelers Hotel, N.Y.C.
12/20/68
31.50
Statler Hotel, Wash., D.C.
12/21/68
81.94
Georgetown Inn, Wash., D.C.
12/23/68
346.51
Waldorf Astoria, N.Y.C.
12/24/68
145.52
Georgetown Inn, Wash., D.C.
12/25/68
136.18
Century Plaza, Los Angeles, Cal.
12/26/68
440.74
Hotel Ghion, Addis Ababa, Ethiopia
12/27/68
135.00
Hotel Ghion, Addis Ababa, Ethiopia
12/18/68
1,000.00
Waldorf, Astoria, N.Y.C.
4/06/68
2,809.19
Hotel Athens, Greece
5/14/68
191.19
Hotel bill on stationary
1,824.00
Hotel bill on stationary
112.00
Overseas Film & T.V. Center, Ltd.
5/ 5/68
2,400.00
6/ 4/68
2,600.00
3,000.00
11/27/68
2,500.00
12/20/68
2,500.00
Mulle H. Brooke & Co.
1/16/68
683.83
Oakes Hotts Ltd. (Food)
2/13/68
360.00
Personal clothing (on shoe ticket
stub)
110.00
Mrs. Townsend (London)
12/29/68
140.64
Hot, Hotpants, & Hairpiece
Mrs. Townsend (London)
448.80
Beads, Feathers, & Chiffon
Angelo Men's Shop (Rome)
648.00
F.R. Tripler & Co. N.Y.C.
26.25
City of Westminister
3/18/68
1,000.00
Receipt # 103
12/28/68
3,000.00
Receipt # ?
4,000.00
Morgan Travel Agency
8,345.00
TOTAL
$ 45,544.16
3. Because of the undeveloped areas in Ethiopia and Liberia in which petitioner sometimes filmed, invoices and formal receipts were unavailable and simple pieces of paper were necessarily used by petitioner as receipts.↩
4. Some of these expenses verified by receipts were disallowed because the receipts were marked "charge to Ethiopia" or "charge to Liberia." These receipts were so marked as part of petitioner's cost accounting system. Other expenses were disallowed because of the wording of one of petitioner's contracts with the Ethiopian government which in pertinent part states: "it is agreed that all transportation, ground and air, food and hotel accommodation for the crew of two and yourself only; while filming in Eritrea, will be provided by the Government." Other contracts with Liberia and Ethiopia, however, provided only a set fee to be paid to petitioner. The revenue agent did not have copies of any of these other contracts nor were such contracts provided by petitioner to him during the audit.↩
5. 1. Gross Income 1968 of
$ 177,075
Less: Allowed deductions of
101,677
Net Income
$ 75,398
2. $ 75,398 / $ 177,075 = 42.58 percent 3. 42.58 percent of 1969 gross income of $ 117,870 = $ 50,189 4. Gross income of $ 117,870 less $ 50,189 = $ 67,681 allowed deductions.↩
6. It would appear that the substantiation requirements of section 274(d) would apply to some of these claimed deductions. To that extent, those expenses which petitioner could not testify to as to business purpose and which business purpose was not recorded in petitioner's log would have to be disallowed. Cf. Nicholls, North, Buse Co. v. Commissioner,56 T.C. 1225↩ (1971). Respondent does not rely on section 274, however, and because we cannot be absolutely certain which of these expenses fall under section 274, we do not apply it.
7. Petitioner argued first that respondent could have tied in all expenses to his 1969 return. However, because we find as a fact that petitioner's records were inadequate to do so, petitioner obviously cannot rely on this alternative argument.↩
8. On brief, petitioner claims a $35,000 exclusion; however, for the years in issue the exclusion was limited to only $25,000. There is no dispute that petitioner has met the requirements of section 911(a)(2) thereby entitling him to the $20,000 exclusion permitted by section 911(a)(1)(A).↩
9. Excludable Earned Income was limited to a maximum of $20,000 under section 911(c)(1)(A). Since respondent also determined that capital was a material income-producing item, the amount of excludable earned income was limited under section 911(b) to 30 percent of petitioner's net profits.↩