FAIRFAX MUTUAL WOOD PRODUCTS COMPANY, FAIRFAX, SOUTH CAROLINA, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7784.    Promulgated December 19, 1945.

*George Warren, Esq.,* and *J. W. Hunt, C. P. A.,* for the petitioner.
*F. L. Van Haaften, Esq.,* for the respondent.

OPINION.

ARUNDELL, *Judge*: The principal question is whether the petitioner was a personal service corporation in 1941. Under the applicable statute, section 725 (a) of the Internal Revenue Code,[1] certain requirements must be met before a corporation is entitled to be so classified. In the main, the standards set are that the corporate income must be ascribed primarily to the activities of shareholders who are regularly engaged in the business and at all times own at least 70 percent

---

[1] SEC. 725. PERSONAL SERVICE CORPORATIONS.

(a) *Definition.*—As used in this subchapter, the term " personal service corporation " means a corporation whose income is to be ascribed primarily to the activities of shareholders who are regularly engaged in the active conduct of the affairs of the corporation and are the owners at all times during the taxable year of at least 70 per centum in value of each class of stock of the corporation, and in which capital is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists of gains, profits, or income derived from trading as a principal. For the purposes of this subsection, an individual shall be considered as owning, at any time, the stock owned at such time by his spouse or minor child or by any guardian or trustee representing them.

of the corporation's capital stock. Capital must not be a material income-producing factor. Any corporation 50 percent or more of whose gross income is derived from doing business as a principal is excluded.

In our opinion the petitioner does not meet the requirements of the statute. In the first place, its entire gross income appears to have been derived from trading as a principal. Petitioner bought and sold only for its own account, and not as agent or broker for another. It is true that the processing and finishing by petitioner of logs and lumber purchased by it contributed to the sale prices received. However, even though such processing and finishing were on the basis of specifications submitted by a customer, petitioner's services were not those of an agent, nor was its business conducted on a commission basis. Petitioner assumed all the risks of business. Its gross profit was not measured by the value of the services it performed, but by the difference between the sale prices of the products and the cost of manufacturing them. Though it produced only "parts," petitioner was nevertheless a primary trader.

One of the requirements of the statute is that capital (whether invested or borrowed)[2] is not a material income-producing factor. Here it appears that it was. The processing and finishing of fine furniture from logs or lumber, on the scale undertaken by the petitioner company, obviously required the use of a plant and equipment. The use of such facilities, valued at around $50,000, was obtained by petitioner under a lease in consideration of an annual rental payment. The plant and equipment were necessary to the conduct of the business. When the use of capital plays a vital part in the carrying on of the business, it can not be said that its use is merely incidental thereto. *Hubbard-Ragsdale Co.* v. *Dean*, 15 Fed. (2d) 410; affd., 15 Fed. (2d) 1013. It has been held that a valuable leasehold constitutes capital, *Cotton Hotel Co.* v. *Bass*, 7 Fed. (2d) 900; *Bowe-Burke Mining Co.* v. *Willcuts*, 22 Fed. (2d) 204; *Vermillion Coal Co.*, 12 B. T. A. 1161; and, while we do not have access to the terms and conditions of the lease here involved, it appears that the same ruling should apply. Moreover, though its paid in capital was small, petitioner enjoyed the use of borrowed capital and credit upon which it paid interest. Petitioner also extended credit.

Only about 24 of petitioner's 50 employees were shareholders. Most of the employees were skilled. It does not appear that the value of and the compensation charged for the services of the skilled nonshareholder employees were attributable to the skill or supervision of the shareholders. The circumstances herein preclude petitioner from obtaining the benefits of the statute in question.

---

[2] Conference Committee Report, H. R. 3002, 76th Cong., 2d sess. (C. B. 1940–2, pp. 548, 557).

*Cocks-Clark Engraving Co.*, 8 B. T. A. 468, and *Innes-Behney Optical Co.*, 7 B. T. A. 982, relied upon by the petitioner, are clearly distinguishable from the instant case.

While we have concluded that the petitioner corporation did not, in 1941, fall within the statutory definition of a personal service corportation, we believe the record amply supports the view that petitioner's failure to file an excess profits tax return was due to reasonable cause and not due to willful neglect. Petitioner's president, Brewer, discussed fully the matter of making returns with the local collector and his subordinates and was told to file the income tax return and to attach thereto a statement explaining the operation of the business and the basis for the corporation's claim. A statement, entitled "Schedule explaining absence of excess profits tax return," was attached to the return. It contained an explanation of the manner in which petitioner conducted its business, a list of the stockholders and the number of shares owned by each, and a statement to the effect that petitioner considered itself a personal service corporation and that, although its profits had not been distributed, the stockholders had included their share of the profits of the corporation in their individual returns and had paid the tax thereon. We do not think that we are warranted in holding that a corporation claiming the benefits of section 725, *supra*, does so at its peril. An election, in good faith, based upon an analysis of its own business should not, we think, open the way to the imposition of the penalty if such election be an erroneous one. Petitioner did not willfully neglect to file an excess profits tax return, but advisedly refrained from filing in a reasonable belief that none was required of it. It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay. *Spies* v. *United States*. 317 U. S. 492. The imposition of the delinquency penalty under section 291 (a) is not justified.

*Decision will be entered under Rule 50.*