OPINION. OppeR, Judge: Although petitioner had originally engaged only in the business of selling on commission, it was also, during the instant tax years, a manufacturer of hosiery. This central fact seems to us a significant point of departure for a consideration of the sole issue as to petitioner’s status under section 725 (a) of the code as “a personal service corporation.” [2] One would not normally expect a manufacturing corporation, even though engaged in other lines of business, to be considered a personal service company. See Hubbard-Ragsdale Co. v. Dean, 15 Fed. (2d) 410, 411; affd. (C. C. A., 6th Cir.), 15 Fed. (2d) 1013. The employment of capital as a material income-producing factor would ordinarily be thought of as an essential element in such a business. Because of petitioner’s peculiar method of operation, it is enabled to make a superficially plausible argument that such was not the case in its unique situation. But a more careful analysis of the actualities seems to us to result in the conclusion that, even as to the technicalities, compliance with the statute is more apparent than real. Even if we assume, as petitioner so strenuously contends, that the use of current earnings does not constitute “capital,” the fact remains, as petitioner concedes, that in at least one of the months before us cash or borrowed capital[3] of $6,500 was required;[4] and, in addition, a floating inventory ranging in cost from about $1,500 to $20,000, and apparently averaging over the two years about $15,000, was likewise essential.[5] That petitioner contracted for the various manufacturing processes to be carried on by others, and that it hence avoided such capital requirements, as plant, machinery, and tools, cf. Fairfax Mutual Wood Products Go., 5 T. C. 1279, does not overcome either the fact that the inventory in course of production belonged to it, or that capital invested in it was both material in size, and essential in character.[6] George A. Springmeier, 6 B. T. A. 698; Denver Livestock Commission Co. v. Commissioner (C. C. A., 8th Cir.), 29 Fed. (2d) 543. We recognize the force of petitioner’s complaint that from the conclusion of liability for excess profits tax will flow the necessity of taxing its entire income and not merely that secured from the manufacturing business. The issue before us, however, and the inescapable language of the applicable provisions remove such considerations from those of which we may properly take account. The deficiency seems to us to have been correctly determined. Decision will be entered for the respondent. (a) Definition. — As used in this subchapter, the term “personal service corporation” means a corporation whose income is to be ascribed primarily to the activities of shareholders who are regularly engaged in the active conduct of the affairs of the corporation and are the owners at all times during the taxable year of at least 7b per centum in value of each class of stock of the corporation, and in which capital is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists of gains, profits, or income derived from trading as a principal. For the purposes of this subsection, an individual shall be considered as owning, at any time, the stock owned at such time by his spouse or minor child or by any guardian or trustee representing them. In the profit and loss statements attached to the stipulation of facts, certain expense items, particularly one of oyer $5,000 for each year, described as “Factoring commission,” are attributed exclusively to the manufacturing operations. If this attribution .is proper, it must presumably be on the theory that this was the cost of procuring the capital foigthe manufacturing business, since, if it had possessed the requisite capital, it would not have had to resort to discounting its receivables with the factor. This is itself inconsistent with petitioner’s claim of the relative unimportance of the use of capital in that business. Petitioner’s treasurer testified in answer to the question : “Suppose you had not advanced the money to the contractor for the lace, would he have bought it? “The Witness : No, sir. “The Court : And you would not have had any stockings ? “The Witness : No, sir.” As in most manufacturing operations, petitioner’s inventory had two aspects, raw materials on the one hand and finished goods or work in process on the other. By using the proceeds of the sale of its accounts receivable, it eliminated much of the investment in the former, although the sum of $6,500 referred to was required for this purpose. See footnote 4, supra. But the inventory in which petitioner could not apparently avoid an investment was the undyed and unshipped completed stockings, and the returns and rejects which had to be worked over. A comparison of material elements in the Springmeier case and the instant one reveals the following: Springmeier Petitioner 1918 1919 1920 1941 1942 1943 Closing inventory_ $0.00 $11,151.90 $0.00 $1,450.83 $20,023.14 $19,206.84 Commissions (gross)... 20,470.96 26,826.38 106,492.64 100,529.66 Other business (gross). 8,816.17 4,910.85 24,242.06 37,517.74