ROBERT G. MOORE AND W. YVONNE MOORE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10637–77. Filed January 11, 1979.

*James M. Havach, M. R. Schlesinger,* and *Charles W. Landerfeld,* for the petitioners.

*Robert N. Armen, Jr.,* and *John R. Dorocak,* for the respondent.

DAWSON, *Judge:* Respondent determined deficiencies of $12,998.38 and $23,506.31 in the Federal income tax of petitioners for the taxable years 1974 and 1975, respectively. The issue for our decision is whether within the meaning of section 1348[1] capital was a material income-producing factor in petitioners' retail grocery business.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.

Robert G. Moore and W. Yvonne Moore, husband and wife (hereinafter petitioners), resided in Willard, Ohio, at the time their petition was filed in this case. Petitioners filed joint Federal income tax returns for 1974 and 1975 with the Internal Revenue Service Center, Cincinnati, Ohio.

During 1974 and the first 11 months of 1975, petitioners were each partners with a 50-percent interest in a general partnership operating under the name of Bob G. and Yvonne Moore, Willard I.G.A. Foodliner (hereinafter the partnership). The partnership owned and operated a retail grocery store in Willard, Ohio (hereinafter the Willard store), under a franchise granted by the Independent Grocers' Alliance (hereinafter I.G.A.). I.G.A. is a national franchise for independent grocery stores and warehouse outlets from which I.G.A. retail stores purchase the bulk of their inventory.

Partnership income derived by petitioners during the calendar year 1974 and the first 11 months of the calendar year 1975 was $194,005.73 and $244,968.92, respectively, which petitioners reported as earned income qualifying for the maximum tax on earned income under section 1348. Effective December 1, 1975,

---

[1]Unless specified otherwise, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.

petitioners caused the partnership's assets and business to be transferred to an Ohio corporation named Willard Foods, Inc., doing business under the name "Bob and Yvonne Moore, Willard I.G.A. Foodliner" (hereinafter referred to as the corporation). The corporation was solely owned by petitioners. In December 1975, petitioners received salaries from the corporation in the aggregate amount of $2,659.08 and reported these salaries on their 1975 joint income tax return without treating the amounts as qualifying under section 1348.

The Willard store was operated from a leased building with approximately 12,000 square feet of floor space. Rent for the building for 1974 and for the first 11 months of 1975 was $26,960.63 and $22,370.26, respectively. Much of the equipment and trade fixtures used in the store was old but well maintained. The Willard store had three checkout counters; each used mechanical cash registers rather than modern electronic scanning registers.

Approximately 20 full-time and 10 part-time employees were employed in the operation of the Willard Store. Petitioners were the sole managers of the store and made all decisions regarding personnel, purchasing, and pricing. Robert and Yvonne devoted an average of 75 hours and 42.5 hours per week, respectively, to the management and operation of the store.

Except for isolated instances, sales in the store were made for cash. Daily deposit of business receipts was made to a checking account. Inventory purchases were made on a cash basis or very short-term credit.

In 1974 and 1975, petitioners reported the following financial figures for the partnership on their returns:

|  | 1974 | 1975 |
|---|---|---|
| Gross receipts | $2,643,682.51 | $2,794,939.53 |
| Cost of goods sold | 2,191,414.82 | 2,295,894.07 |
| Gross profit | 452,267.69 | 499,045.46 |
| Other income | 11,810.08 | 14,443.31 |
| Total income | 464,077.77 | 513,488.77 |
| Total deductions[1] | 410,524.05 | 439,197.29 |
| Ordinary income | 53,553.72 | 74,291.48 |

[1]Inclusive of payments to partners—salaries and interest—in the amount of $141,055.06 for 1974 and $172,191.83 for 1975.

The cost of goods sold was determined as follows:

|  | 1974 | 1975 |
|---|---|---|
| Beginning inventory .......... | $60,554.47 | $75,211.24 |
| Purchases (less cost of items withdrawn for personal use) ................... | 2,206,071.59 | 2,311,869.55 |
| Cost of labor .................... | 0 | 0 |
| Materials and supplies ....... | 0 | 0 |
| Other costs ...................... | 0 | 0 |
| Total ............................. | 2,266,626.06 | 2,387,080.79 |
| Less: ending inventory ....... | 75,211.24 | 91,186.72 |
| Cost of goods sold ............ | 2,191,414.82 | 2,295,894.07 |

Petitioners determined inventory quantity by physical count at year's end and inventory value by marking down the retail price to cost by a specified percentage.

The book value of assets owned by the partnership was as follows:

|  | Jan. 1, 1974 | | Dec. 31, 1974 | | Nov. 30, 1975 | |
|---|---|---|---|---|---|---|
| Cash ............................................. | | $55,998.67 | | $110,566.15 | | $140,409.46 |
| Receivables ...................................... | | 2,410.25 | | 1,500.47 | | 33,123.57 |
| Inventories ...................................... | | 60,554.47 | | 75,211.24 | | 91,186.72 |
| Fixed depreciable assets .......... | $135,259.51 | | $146,988.13 | | $154,374.64 | |
| Less accumulated depreciation ... | 59,523.06 | 75,736.45 | 81,875.53 | 65,112.60 | 91,645.22 | 62,729.42 |
| Other assets ..................................... | | 1,797.00 | | 620.61 | | 2,735.17 |
| Total assets ...................................... | | 196,496.84 | | 253,011.07 | | 330,184.34 |

The Willard store was run very efficiently. Inventory purchases were tightly controlled to maximize turnover. Labor expenses were minimized by efficient operation and by extensive services performed directly by petitioners. As a result, the Willard store was much more profitable than some otherwise comparable stores.

## OPINION

Section 1348[2] generally limits the maximum rate on earned

---

[2]SEC. 1348. FIFTY-PERCENT MAXIMUM RATE ON EARNED INCOME.

(a) GENERAL RULE.—If for any taxable year an individual has earned taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of—

(1) the tax imposed by section 1 on the lowest amount of taxable income on which the rate of tax

taxable income to 50 percent. Earned income is defined for purposes of section 1348 as pertinent here[3] as earned income within the meaning of section 911(b), which provides in part as follows:

For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

The issue here is whether capital was a material income-producing factor in petitioners' grocery store partnership, thereby limiting the amount qualifying for the benefits of section 1348 to 30 percent of the net profits of their business.[4]

Respondent argues that capital was a material income-producing factor in petitioners' grocery store business as evidenced by substantial investment in inventories, plant, machinery, and other equipment. Petitioners acknowledge the use of inventory and other capital in their business but rely on the testimony of their expert witness, an agricultural economist specializing in financial analysis of independent retail grocery operations, that

---

under section 1 exceeds 50 percent,

(2) 50 percent of the amount by which his earned taxable income exceeds the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, and

(3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his earned taxable income.

*     *     *     *     *     *     *

(b) DEFINITIONS.—For purposes of this section—

(1) EARNED INCOME.—The term "earned income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b), except that such term does not include any distribution to which section 72(m)(5), 402(a)(2), 402(e) or 403(a)(2)(A) applies or any deferred compensation within the meaning of section 404. * * *

[3] The alternative meaning, inapplicable here, is defined in sec. 401(c)(2)(C) as "gains (other than any gain which is treated under any provision of this chapter as gain from the sale or exchange of a capital asset) and net earnings derived from the sale or other disposition of, the transfer of any interest in, or the licensing of the use of property (other than good will) by an individual whose personal efforts created such property."

[4] Respondent makes no contention that this amount would be more than reasonable compensation for petitioners' services.

the net income from petitioners' grocery store was attributable almost entirely to the personal services of petitioners. Petitioners' witness presented evidence based on detailed financial analysis that, compared to other grocery stores, petitioners' store minimized inventory, other capital investment, and labor expenses so that they achieved a much higher than average return on net worth notwithstanding minimal use of leveraging. From such evidence, petitioners' witness deduced that only 10 percent of the income in petitioners' store was attributable to capital and that, although capital was a material income-producing factor in the other stores, it was not in petitioners' business. We think petitioners' arguments are without merit. We agree with respondent that capital was a material income-producing factor in petitioners' grocery store business.

Although we have addressed the issue of whether capital is a material income-producing factor only once before in the context of section 1348, the issue has been previously considered as relevant under other provisions of the Internal Revenue Code. See *Bruno v. Commissioner*, 71 T.C. 191 (1978). In *Bruno* and other opinions, we have followed the general rule that capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business. Capital is a material-income producing factor "if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment," and not if the "gross income of the enterprise consists principally of fees, commissions, or other compensation for personal services." *Rousku v. Commissioner*, 56 T.C. 548, 551 (1971). This same approach is employed in section 1.1348–3(a)(3)(ii), Income Tax Regs., as follows:

(ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the

practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice.

Under this test, a retailing business selling its inventory of groceries necessarily employs capital as a material income-producing factor.

Although petitioners' services were substantial and important in preparing and presenting the store's inventory for retail sale, a substantial portion of the gross income of their business is attributable to the use of capital. The capital employed as inventory was of primary importance. The book value[5] of the inventory reported in the record was substantial, ranging from $60,554.47 on January 1, 1974, to $91,186.72 on November 30, 1975. Also material were investments in depreciable assets which had a book value of more than $60,000. Leased property is also considered capital and here the leased building housing the Willard store represents a substantial amount of capital for which petitioners paid rent at an annual rate of more than $20,000. See *Rousku v. Commissioner, supra* at 551; *Fairfax Mutual Wood Products Co. v. Commissioner*, 5 T.C. 1279, 1282 (1945).

These are substantial amounts and we think that all of the income of the business is attributable to such capital investments. Petitioners' services in retailing are also a material income-producing factor but are inseparable from the inventory purchased by its customers. The gross income of their business came entirely from the price paid for its groceries, not from any fees, commissions, or other compensation paid directly for personal services. We find that the capital employed in inventory, equipment, and building is a material income-producing factor in such business.

In our judgment, the conclusion otherwise reached by petitioners' expert witness is without basis in law. The witness undoubtedly is well qualified in his field of agricultural economics and financial analysis of retail groceries, but he was

---

[5]Petitioners question the use by respondent of book value as the value of assets in his analysis of whether capital was material. It is true, as petitioners suggest, that book value may vary from fair market, replacement, or liquidating values. We do not think respondent can be faulted for using book value, however, since it is probative of whether capital was a material item. The burden of proof is on petitioners, Rule 142(a), Tax Court Rules of Practice and Procedure, and, if they desired to dispute the value of the assets, additional evidence could have been presented at trial.

not equipped to address the legal question of whether, for purposes of section 1348, capital was a material income-producing factor. In fact, petitioners' witness admitted that he had never addressed this issue prior to the instant case. After examination of his analysis, we are not inclined to adopt it as our own notwithstanding the fact that respondent did not present an expert witness to refute the testimony of petitioners' expert. Although it may be appropriate to accept a qualified expert's credible testimony on factual issues, we are not compelled to accept the testimony of any expert as conclusive on a factual issue which has its foundation in a strictly legal framework.

The conclusion of the expert witness that capital was not a material income-producing item in petitioners' grocery was based on his analysis that the petitioners had a much higher return on net worth than otherwise comparable retail grocery stores. Petitioners achieved this profitability by minimizing the investment in inventory and equipment, by working exceptionally long hours to minimize labor costs, and by otherwise achieving efficient operation of their business. Since other retail grocery stores with equivalent capital investments would have had a much lower return on net worth, the expert witness estimated that 90 percent of the income was attributable to petitioners' services and only 10 percent to capital, an amount which he designated as not material.

While this analysis may have considerable appeal as an academic exercise, it has no foundation in the legal definition of whether capital is a material income-producing factor. The pertinent issue under section 1348 is not how efficiently petitioners' ran their business, but whether "a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment." Sec. 1.1348–3(a)(3)(ii), Income Tax Regs. Under this test, it is our view that all retail grocery businesses employ capital as a material income-producing factor. We will not differentiate among retail groceries on the basis of how profitably they are operated.

Accordingly, we hold that for purposes of section 1348, capital was a material income-producing factor in petitioners' retail

grocery business. Consequently, only 30 percent of the net profits of their business qualify for the benefits of section 1348. To dispose of another matter,[6]

*Decision will be entered under Rule 155.*

---

[6]In their petition and opening brief, petitioners allege in summary fashion that their December 1975 salaries should have received the benefits of sec. 1348. Respondent made only a general denial in his answer and did not address the issue on brief.