JOHN E. VAN KALKER, JR., AND CAROL VAN KALKER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5554–81.    Filed August 4, 1983.

*John M. Van Der Aa* and *Russell T. Paarlberg,* for the petitioners.

*Ronald A. Stein,* for the respondent.

FEATHERSTON, *Judge*: Respondent determined a $14,578 deficiency in petitioners' 1978 Federal income tax. The only issue is whether capital is a material income-producing factor in petitioners' ornamental iron business.

### FINDINGS OF FACT

Some of the facts are stipulated and are found accordingly.

Petitioners John E. Van Kalker, Jr., and Carol Van Kalker, resided in South Holland, Ill., when they filed their petition herein.

For the past 23 years, John E. Van Kalker, Jr. (hereinafter petitioner), has been a sole proprietor in the business of fabricating and installing wrought iron railings. Under the name "Van's Ornamental Iron Co.," petitioner operates the business out of a structure the size of a four-car garage adjacent to his home. This structure was built years ago by petitioner's father to repair farming equipment when the area was still a farming community. Since there was little money in farming when petitioner finished high school, he used the structure to start his ornamental iron business.

The ironwork is used primarily for railings around decks and for staircases; it is also used for fences, gates, and arches. Each railing or product is custom made by petitioner. It is separately measured, fabricated, and installed. Petitioner

visits the location, discusses designs and plans with the customer, and takes measurements. The specifications and measurements are then given to an employee who, in the normal case, prepares the desired product. The employee removes iron rods from stock and cuts, bends, welds, and paints them. The ironwork is then taken to the location wherein petitioner, himself, installs the finished product.

In the beginning, petitioner made his own tools which included a simple welder, a saw, and an old stoker. In the first 5 years, he employed one or two people. The business grew until its peak year 1978, the taxable year in issue, when petitioner employed six or seven people. As of 1978, equipment used in the business included two metal cutters, four welders, and an assortment of handmade tools. A stock of unworked iron rods and bars was also kept on the premises.

Petitioner sold a majority of his railings to individual homeowners; the rest were sold to building contractors for newly constructed homes. Petitioner's sales were generally made within a 40-mile radius of his home located 20 miles south of Chicago. Petitioner depended on word-of-mouth for advertising.

As of 1978, the bases of the following depreciable assets used in petitioner's business were as follows:

|  | Adjusted basis | Depreciation allowed or allowable in prior years |
|---|---|---|
| Trucks and automobiles ............ | $24,953 | $7,104 |
| Machinery and equipment ......... | 19,040 | 12,105 |
| Furniture and fixtures .............. | 2,728 | 758 |
| Total ............................... | 46,721 | 19,967 |

Petitioner had $476,178 in gross receipts from sales in 1978. His cost of goods sold plus materials and supplies was $113,010.[1] The cost of labor was $105,125.

Petitioner's 1978 net profit from his business was $196,046. On their 1978 Federal income tax return, petitioners treated

[1]The $113,010 figure is made up of $95,235 in cost of goods sold and $17,775 in materials and supplies. The $95,235 cost of goods sold is computed on the basis of a beginning inventory of $10,277, an ending inventory of $11,066, and purchases of $96,024.

the entire $196,046 net profit as personal service income within the meaning of section 1348,[2] thus qualifying for the 50-percent maximum tax rate. In his notice of deficiency, respondent determined capital was a material income-producing factor in the business; thus, respondent limited the amount subject to the maximum tax to 30 percent of the net profit.

OPINION

In 1978, petitioner had net earnings of $196,046 from a business in which he engaged in the fabrication and sale of ornamental ironworks. He contends that capital was not a "material income-producing factor" in his business, within the meaning of section 1348, with the result that the entire amount of his net earnings is "personal service income" qualifying for the maximum tax rate limitations in effect in 1978. Respondent, on the other hand, argues that capital was a material factor in the production of petitioner's income so that not more than 30 percent of his net profits from the business is considered earned income, qualifying for the maximum tax rate limitation. In the light of all the facts, we think respondent has the better side of the argument.

Section 1348(a), in the form in which it was in effect in 1978, prescribed a 50-percent maximum tax rate limitation with respect to "personal service taxable income." Section 1348(b)(1)(A) defined the term "personal service income" to include any income which is "earned income" within the meaning of section 401(c)(2)(C)[3] or section 911(b). Section

---

[2]All section references are to the Internal Revenue Code of 1954 as in effect during the tax year in issue, unless otherwise noted.

[3]In addition to his primary argument under sec. 911(b), petitioner argues that sec. 401(c)(2)(C) applies to categorize the net profits as earned income. We disagree. That section defines "earned income" as certain gains and net earnings derived from "property (other than goodwill) by an individual whose personal efforts created such property." Where an individual's employees actually create the property in question, it cannot be said that the individual's "personal efforts created such property." *Van Dyke v. United States*, an unreported case (Ct. Cl. Trial Div. 1982, 49 AFTR 2d 82–556, 82–1 USTC par. 9156), affd. 696 F.2d 957 (Fed. Cir. 1982). Sec. 401(c)(2)(C) was designed to cover income earned by an individual as, for example, an author or inventor; neither its language nor its legislative history indicates that it was intended to describe income earned in a factory or factory-like setting in part by supervised employees. See S. Rept. 1707, 89th Cong., 2d Sess. (1966), 1966–2 C.B. 1059, 1103 (1966); *Tobey v. Commissioner*, 60 T.C. 227, 234 (1973); *Van Dyke v. United States, supra*.

911(b),[4] as it was in effect in 1978, defined the term "earned income" to mean "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered"; with regard to self-employed persons, section 911(b) contains the following provision:

> In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.

The congressional objective in incorporating by reference this trade-or-business language into section 1348 was to extend the benefits of the maximum tax limitations to the portion of an individual's net profits which represented a reasonable allowance for compensation for the personal services actually rendered by him.[5] At the same time, the objective was to deny those limitations to income derived by a taxpayer materially from assets or capital used in a trade or business. Just as amounts in excess of reasonable compensation paid to an employee-shareholder as salary may be treated as dividend income,[6] which in 1978 could be taxed up to a 70-percent rate, the amounts above the level of reasonable compensation for the services rendered by a self-employed individual were intended to be treated as attributable to capital, taxable without regard to the section 1348 limitations.[7]

[4]Sec. 911(b) provides in part as follows:

SEC. 911(b). DEFINITION OF EARNED INCOME.—For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. * * *

[5]The regulations (sec. 1.1348–3(a)(3)(i), Income Tax Regs.) articulate the rule as follows:

"If an individual is engaged in a trade or business * * * in which both personal services and capital are material income-producing factors, *a reasonable allowance as compensation for the personal services actually rendered by the individual* shall be considered earned income * * * [subject to the 30-percent limitation]. [Emphasis added.]"

[6]See *Kennedy v. Commissioner*, 72 T.C. 793, 805–806 (1979), revd. on other grounds 671 F.2d 167 (6th Cir. 1982); *Kipnis v. Commissioner*, T.C. Memo. 1982-471.

[7]Sec. 1348(b)(1)(A), as it stood for the years before 1979, imposed a mechanical 30-percent cap on self-employment income that could be treated as compensation if capital was a material income-producing factor. This 30-percent limitation was removed for years after 1978 by sec. 442(a), Revenue Act of 1978, Pub. L. 95–600, 92 Stat. 2878. The accompanying S. Rept. 95-1263 (1978), 1978-3 C.B. (Vol. 1) 315, 506 (1978), again explains that the preferred

To aid in determining whether capital is material to the production of the income, the regulations set forth guidelines drawn mainly from the decided cases interpreting other Code sections or provisions of prior law involving the issue of capital as a material income-producing factor. See, e.g., *Rousku v. Commissioner*, 56 T.C. 548, 551 (1971). Sec. 1.1348–3(a)(3)(ii), Income Tax Regs., provides as follows:

(ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. * * * [8]

Under this test, capital was a material factor in earning a substantial portion of the gross income of petitioner's business. The earnings did not consist "principally of fees, commissions, or other compensation" (sec. 1.1348–3(a)(3)(ii), Income Tax Regs.), but were realized from manufacturing and sales operations.

Petitioner's manufacturing activities, involving the fabrication of ornamental ironworks, employed a significant amount

---

treatment is intended for compensation for services actually rendered by individuals engaged in self-employment as follows:

"In addition, the bill removes the 30-percent limitation on the amount of income from a trade or business that can be treated as personal services income where capital is an income-producing factor. Instead, *individual taxpayers would receive the benefits of the 50-percent maximum tax on earned income only for income that constitutes a reasonable compensation for the services they actually render* whether or not they conduct their businesses in corporate form. In making this determination, the reasonable compensation paid for personal services actually rendered would be allowed. * * * [Emphasis added.]"

Sec. 1348 was repealed for taxable years beginning after Dec. 31, 1981, when the highest marginal rate for all income was reduced from 70 percent to 50 percent. Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 101(c)(1), 95 Stat. 183, and sec. 101(a), 95 Stat. 176.

[8] Clearly, "capital" in this context has a broader meaning than in many other Code provisions. Purchases of inventory, for example, are considered "capital" for purposes of sec. 1348 even though inventory is ordinarily an element in the computation of the cost of goods sold. See *Gaudern v. Commissioner*, 77 T.C. 1305, 1311–1312 (1981); *Moore v. Commissioner*, 71 T.C. 533, 539 (1979). Capital has also been held to include: payments made for mixed concrete laid by a concrete finisher (*Gullion v. Commissioner*, T.C. Memo. 1982–106); rented mailing lists and customer prepayments (*Treatman v. Commissioner*, T.C. Memo. 1981–74); leased property (*Fairfax Mutual Woods Products Co. v. Commissioner*, 5 T.C. 1279, 1282 (1945)); and credit extended by suppliers, *Friedlander v. United States*, an unreported case (W.D. Wash. 1982, 51 AFTR 2d 83–328, 82–2 USTC par. 9577).

of capital which was material to the production of the business's income. In addition to the capital required to meet operating expenses,[9] capital was used to buy an inventory of iron rods and other materials and supplies at a total cost of $113,010. Although the inventories on hand at the beginning and at the end of the year were approximately $10,000 and $11,000, respectively, petitioner made purchases of $96,024 worth of raw materials during the year, equal to 20 percent of the gross receipts ($476,178). The total amount spent on the inventory of raw materials is a far more important figure than the opening and closing amounts. Significantly, the regulation (sec. 1.1348–3(a)(3)(ii), Income Tax Regs.) refers to the "employment" of capital, not merely its possession. And the courts have said that "it is not the presence of capital, but its use in earning income, that is the controlling consideration." *Fuller & Smith v. Routzahn*, 23 F.2d 959, 963 (N.D. Ohio 1927); *Lewis v. Commissioner*, 42 T.C. 885, 892 (1964).

Petitioner argues that he could just as easily have bought the iron he needed in his business piece by piece and kept no inventory of raw materials on hand and thus would have had no capital "invested" in inventory. But the result would have been the same. Petitioner was not a broker of these materials. Cf. *Gaudern v. Commissioner*, 77 T.C. 1305, 1311–1312 (1981). He did not receive the raw materials on consignment from his customers. His income was attributable to the facts that he used capital to buy the raw materials, had craftsmen fashion the ornamental works, and sold his manufactured product at a profit; it was not attributable to fees for services rendered by him. Whether the materials used to make the ornamental iron products sold throughout the year were acquired piecemeal over the course of the year or acquired in one lump sum does not affect their role in producing the business's annual income.[10]

---

[9]As stated in *Ketter v. Commissioner*, 70 T.C. 637, 645 (1978), affd. without published opinion 605 F.2d 1209 (8th Cir. 1979) (involving the materiality of capital under sec. 704(e)): "The need for liquid assets to defray current operating expenses may be a factor in determining the materiality of capital as an income-producing factor."

[10]In *Gullion v. Commissioner, supra,* the taxpayer retained no inventory of mixed concrete but ordered it as needed; in *Treatman v. Commissioner, supra,* the taxpayer kept an inventory of only $3,000 to $4,000 for his mail-order business but made sales of $1,735,286 and $831,314, respectively, in the 2 years in controversy; in *Friedlander v. United States,*

In addition to the employment of operating capital to cover current expenditures, petitioner had a capital investment in furniture, fixtures, and equipment in which the adjusted basis was $46,721 and on which allowed or allowable depreciation as of 1978 amounted to $19,967. These items included the vehicles used in the solicitation of business, the machinery and the tools employed in fabricating the products, and the trucks required to deliver the completed works. Moreover, petitioner had some capital invested in his plant. The record contains no estimate of the value in 1978 of the plant (a financial statement in the record carries the land at $3,204); petitioner emphasizes that his plant building was a modest structure, but it was adequate to house the manufacture of ironworks which petitioner was able to sell for $476,178 and at a $196,046 profit. All of these capital items contributed materially to the production of petitioner's income. "When the use of capital plays a vital part in the carrying on of the business, it can not be said that its use is merely incidental thereto." *Fairfax Mutual Wood Products Co. v. Commissioner*, 5 T.C. 1279, 1282 (1945) (involving the manufacture of furniture parts to the specifications of customers).

Equally important, when we focus on what produced the income, we find that petitioner was not a mere "purveyor of services." *United States v. Korczynski*, an unreported case (S.D. Ohio 1978, 42 AFTR 2d 78–5799, 78–2 USTC par. 9638). His business receipts "were not fees for the rendering of personal services but were prices paid" by his customers for crafted and installed ironworks. *Gaudern v. Commissioner*, *supra* at 1311. In other words, petitioner sold goods and not services. The customers, who were building contractors and homeowners, purchased a product[11] which was fashioned from

*supra*, the taxpayer's wholesale jewelry business, "maintained no merchandise inventory, it had no investment in buildings or equipment, it purchased merchandise only after having received an order from a customer, and its billings (whether at the time of the delivery of the merchandise or at the end of the month) specified immediate cash payment." In all of these cases, in which the taxpayers emphasized the services they performed, capital in the form of inventory purchases was found to be a material income-producing factor.

[11]We do not hold that the mere existence of a product determines that capital is material. Cases may arise in which materials, equipment, etc., play a role in creating a product, where an individual's own personal services are unique, where, in essence, personal services are purchased with capital being incidental. Cf. *Tobey v. Commissioner*, 60 T.C. 227, 235 (1973); *Cook v. United States*, 220 Ct. Cl. 76, 599 F.2d 400, 404 (1979) (both involved artists, but neither considered whether capital was a material income-producing factor).

raw materials, with tools and equipment, by the company's employees. In fact, according to petitioner's testimony, a major retail store sells iron railings which serve the same purpose as his product although, according to petitioner, that store's products are not of equal quality. The creativity, supervision, and physical effort of petitioner were vital to the sale of his product, but his customers did not pay the company fees for petitioner's personal services. Instead, they bought, and petitioner sold, tangible objects wrought from a significant amount of raw materials. The income was thus generated from the sales of ironwork in the production of which capital was highly material.

Petitioner argues that his income was "attributable primarily to personal services." We do not discount the importance of petitioner's efforts and skills—they were clearly necessary and probably indispensable. Petitioner solicited orders from the building contractors and homeowners; he designed the railings and other ornamental ironworks; he installed or supervised the installation of the ironworks fabricated by his employees. His services may have been equally or even more material than capital, but capital was also material. And the relative value of his services is not the question. The statute as it stood in 1978 recognizes that both capital and services may be income-producing factors. It does not permit the courts to compare the relative materiality of the capital and personal service components and hold that capital was not material even if the income was attributable primarily to personal services. If capital is material, as it is here, the statutory 30-percent limitation applies.

As explained in note 7, *supra*, Congress, in the Revenue Act of 1978, amended section 1348, effective for taxable years beginning after December 31, 1978, to remove this mechanical 30-percent limitation and to permit an allocation which reflects a balancing of the relative importance of the two factors. In adopting this amendment, Congress recognized that the 30-percent formula penalized some entrepreneurs and thus encouraged the conversion of sole proprietorships into corporations. See S. Rept. 95–1263 (1978), 1978–3 C.B. (Vol. 1) 315 (1978). But Congress did not see fit to make the amendment retroactive to 1978. We must, therefore, apply the statute as it stood before the amendment.

In recent years, the Court has applied section 1348 in a wide variety of factual situations which are in many respects analogous to the facts here before the Court.[12] In *Bruno v. Commissioner*, 71 T.C. 191 (1978), however, the Court found that a bail-bond business was basically a service activity and held that the capital (mainly in the form of real estate) required to qualify for a State license was not a material income-producing factor because such capital was not actually used in producing the business's income. In contrast, petitioner's business in the instant case was not a service activity but was the manufacture and sale of a product; petitioner's income was attributable in large measure to the actual use of the capital needed for buying raw materials and supplies and for providing and maintaining machinery, transportation equipment, and the plant itself.

In *United States v. Van Dyke*, 696 F.2d 957 (Fed. Cir. 1982), affg. an unreported case (Ct. Cl. Trial Div. 1982, 49 AFTR 2d 82–556, 82–1 USTC par. 9156), the Court found that capital was not a material income-producing factor in a taxidermy supply business. In reaching this conclusion, the Court emphasized the extreme importance of the personal artistic, inventive, and technical skills and expertise of the taxpayer and the relatively insignificant role that capital played in the production of the income. The case is distinguishable from the instant one on its facts. While the Court in *Van Dyke* may appear to have given less weight to the actual use of the taxpayer's capital and more weight to the relative importance of his

---

[12]This Court has held that capital was a material factor in producing the income in *Gaudern v. Commissioner*, 77 T.C. 1305 (1981) (seller of bowling supplies); *Moore v. Commissioner*, 71 T.C. 533 (1979) (retail grocery store); *Black v. Commissioner*, T.C. Memo. 1983–245 (sales of developed real estate); *Pilkington v. Commissioner*, T.C. Memo. 1983–111 (operation of lounge); *Smith v. Commissioner*, T.C. Memo. 1983–93 (paint contracting business); *Nelson v. Commissioner*, T.C. Memo. 1982–361, on appeal (10th Cir., Feb. 2, 1983) (paint contracting business); *Wilson v. Commissioner*, T.C. Memo. 1982–289, affd. ___F.2d ___(10th Cir. 1983) (egg-producing business); *Gullion v. Commissioner*, T.C. Memo. 1982–106 (concrete flatwork business); *McGowan v. Commissioner*, T.C. Memo. 1982–65 (sanitary landfill operation); *Treatman v. Commissioner*, T.C. Memo. 1981–74 (mail order business); *Novikoff v. Commissioner*, T.C. Memo. 1980–330 (movie theater business). For cases decided in other courts holding that capital was a material income-producing factor, see, e.g., *United States v. Korczynski*, an unreported case (S.D. Ohio 1978, 42 AFTR 2d 78–5799, 78–2 USTC par. 9638) (electrical contracting business); *Hutcheson, Jr. v. Commissioner*, 540 F. Supp. 880 (M.D. Ala. 1982) (construction contracting business). But see *Van Dyke v. Commissioner*, 696 F.2d 957 (Fed. Cir. 1982), affg. an unreported case (Ct. Cl. Trial Div. 1982, 49 AFTR 2d 82–556, 82–1 USTC par. 9156) (taxidermy supply business); *Bruno v. Commissioner*, 71 T.C. 191 (1978) (bail-bonding business).

services than have the opinions of this Court, the taxpayer's business in that case was unique. Moreover, to a degree, it must be recognized, "The contribution of capital to income is a matter largely of approximation." *Edward P. Allison Co. v. Commissioner*, 63 F.2d 553, 558 (8th Cir. 1933). For the reasons we have discussed, we think capital played a more vital role in petitioner's business than the Court of Appeals found that it did in *Van Dyke*.[13]

To reflect the foregoing,

*Decision will be entered for the respondent.*

Reviewed by the Court.

SHIELDS, *J.*, dissents.

FAY, *J.*, dissenting: I respectfully dissent. In my view, the majority is taking a much too restrictive and inflexible view of section 1348.

This Court has always treated the issue before us as a question of fact, and we have consistently held that the distinction must be made between income earned by capital and income earned by personal effort. *Gaudern v. Commissioner*, 77 T.C. 1305 (1981); *Rousku v. Commissioner*, 56 T.C. 548, 551 (1971); *Lewis v. Commissioner*, 42 T.C. 885 (1964). It is precisely the relative values of these components that must be considered, and where gross income of the business consists principally of compensation for personal services, capital is generally not a material income-producing factor. Sec. 1.1348–3(a)(3)(ii), Income Tax Regs. Thus, where the value added by personal effort is so substantial in comparison to the value added by the employment of capital, capital will not be deemed a material income-producing factor. *United States v. Van Dyke*, 696 F.2d 957 (Fed. Cir. 1982).[1] And in my opinion, the

---

[13]Also distinguishable are *Zahler v. Commissioner*, 684 F.2d 356 (6th Cir. 1982), revg. and remanding a Memorandum Opinion of this Court (involving income derived from commission sales) and *Roselle v. Commissioner*, T.C. Memo. 1981–394 (in which an identifiable portion of partnership income was derived from management services).

[1]Although sec. 1348 recognizes that both capital and services may be income-producing factors, the majority holds "that the relative value of petitioner's services is not the

unique facts of this case support a conclusion that the value added by the personal efforts of petitioner and his employees is so predominant that capital will not be deemed a material income-producing factor.

What truly makes this case unique is the lack of any significant capital invested in petitioner's business. Lest anyone be misled by visions of smokestacks and assembly lines, petitioner's business was a very small concern with only a minimal investment in capital, certainly not the kind of investment associated with a "manufacturing" business. Petitioner started the business over 23 years ago and continues to operate it out of the same structure his father originally built to repair farm equipment. It is the size of a four-car garage. In the beginning, petitioner made his own tools. As of the year in issue, his tools included two metal cutters, four welders, and an assortment of handmade tools. His adjusted basis in these tools was only $19,040. He also kept a stock of unworked iron rods and bars which are reflected by a 1978 closing inventory of $11,066. Yet, despite this minimal capital investment, his business generated $476,178 in gross receipts and $196,046 in net profits. When the regulations speak of "a substantial investment in inventories, plant, machinery, or other equipment," I cannot imagine they had in mind this business.[2] Sec. 1.1348–3(a)(3)(ii), Income Tax Regs.

The business generates its income through a labor-intensive process whereby raw materials in the form of crude iron rods are transformed into custom-made ornamental iron products. Petitioner visits the location, discusses various designs and plans with each customer, and takes measurements. After

---

question." It further states that the statute "does not permit the courts to compare the relative materiality of the capital and personal service components." I submit that for the issue before us, it is precisely the relative values of these components that must be considered. Indeed, once a determination is made that capital is a material income-producing factor, the statute, as it read during the year in issue, mandated the 30-percent figure and no further inquiry into the relative values could be made. But the statute did not preclude such an inquiry in the initial determination of whether capital is a material income-producing factor, and that is precisely the issue presented in this case.

[2]Other businesses where this Court has held capital to be a material income-producing factor are marked by a substantially greater capital investment which played a significant role in the production of income. See *Smith v. Commissioner*, T.C. Memo. 1983–93, and *Nelson v. Commissioner*, T.C. Memo. 1982–361 (painting businesses featuring blasting equipment); *Wilson v. Commissioner*, T.C. Memo. 1982–289 (egg-producing business); *McGowan v. Commissioner*, T.C. Memo. 1982–65 (sanitary landfill operation); *Novikoff v. Commissioner*, T.C. Memo. 1980–330 (movie theater business).

receiving the specifications and measurements, an employee removes the iron rods from stock and cuts, bends, welds, and paints them to create the finished product. Then petitioner installs it. The efforts, skill, and hours of labor that petitioner and his employees devote to the production of these ornamental products are what account for the business's income. The fruits of their efforts are just as much "earned income" as is a doctor's or lawyer's fee.

The majority points to the fact that petitioner's customers paid for a finished product. As the majority states, "petitioner sold goods not services." I agree that in the vast majority of cases where a tangible product is sold, capital is necessarily a material income-producing factor. For instance, in cases where the taxpayer is a retailer or wholesaler of goods, this Court has recognized that the business income is attributable to the markup in the product itself.[3] But this is not such a case. To be sure, petitioner's customers were buying iron products, but this does not place him in the same category as a wholesaler or retailer. It is not the value or markup in the raw materials that contributed to the business's income. As I have noted, the skill and effort that went into transforming such raw material into the finished product are what produced the income. To simply say petitioner sold goods and not services oversimplifies the problem. And for this reason, I do not place controlling significance on the cost of the raw materials.[4]

In effect, the majority sets a standard which makes it literally impossible for any manufacturing or production concern to qualify for the 50-percent maximum tax rate, for any manufacturing concern is going to sell a product and is going to have a significant cost of material that goes into whatever is being produced. If all net profits of a business such as petitioner's do not qualify, I fail to see how any production

---

[3]See *Gaudern v. Commissioner*, 77 T.C. 1305 (1981) (seller of bowling supplies); *Moore v. Commissioner*, 71 T.C. 533 (1979), and *Jones v. Commissioner*, T.C. Memo. 1982–612 (retail grocery stores); *Rousku v. Commissioner*, 56 T.C. 548 (1971) (automobile body repair business where a substantial portion of the income was from the direct sale of automobile parts); *Pilkington v. Commissioner*, T.C. Memo. 1983–111 (a lounge business where the principal source of income came from the sale of beer and liquor).

[4]Moreover, I note the gross income of a business does not include the cost of goods sold. Sec. 1.61–3(a), Income Tax Regs. See *Winkler v. United States*, 230 F.2d 766 (1st Cir. 1956), holding that this concept ultimately rests on constitutional grounds.

concern can qualify. Congress could have easily excluded manufacturing or production concerns, but it did not. The regulations speak of businesses with "*substantial* investment[s] in inventories, plant, machinery, or other equipment." Sec. 1.1348–3(a)(3)(ii), Income Tax Regs. (Emphasis added.) Clearly then, businesses with insubstantial investments in such items must at least be eligible.

Furthermore, this Court has held that capital was not a material income-producing factor in a business that manufactured eyeglasses upon prescription from oculists. *Innes-Behney Optical Co. v. Commissioner*, 7 B.T.A. 982 (1927). Similar to the crude iron rods in this case, a supply of lenses and frames was kept on the premises to produce the eyeglasses. In holding that capital was not a material income-producing factor, we found that it was essentially the ability of the optometrists and opticians to fit eyeglasses to the individual needs of its customers which produced the business income. We noted—

lenses and frames [like crude iron rods in the instant case] were not kept for sale as such and had little value until made up as eyeglasses through the services performed upon them * * * [*Innes-Behney Optical Co. v. Commissioner, supra* at 985]

Thus, despite the fact that the business manufactured and sold eyeglasses, we held the income was primarily attributable to the efforts and skills of the individuals involved. I see no meaningful distinction between this case and the case before us.[5]

*Innes-Behney* was decided under section 200 of the Revenue Act of 1918 which related to personal service corporations. However, the statutory test is the same, namely, whether capital is a material income-producing factor. This Court has consistently applied principles of cases interpreting this test, notwithstanding the fact that it arises in the context of different Code sections. See *Bruno v. Commissioner*, 71 T.C. 191, 200 (1978); *Miller v. Commissioner*, 51 T.C. 755 (1969); *Lewis v. Commissioner*, 42 T.C. 885 (1964). Moreover, I find no suggestion those same principles should not apply herein.

---

[5]In 1919, the business had gross receipts of $26,491.05. Opening inventory for the lenses and frames was $2,632.68. At the end of the year, the cost value of the assets, consisting of merchandise inventory, furniture and fixtures, and tools and machinery, was $8,445.48. No figures were given for the costs of materials.

I also find support in both the legislative concern and purpose for enacting section 1348. The concern was over the 70-percent tax bracket and its propensity to breed abusive tax shelters. S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 57, 115. The express purpose of section 1348 was to encourage the "work effort." S. Rept. 94–938, *supra*. Certainly, petitioner's strong work ethic cannot be doubted. Given the posture of this case, I am influenced by express congressional purposes.[6]

My views are shared by the newly created Federal Circuit Court of Appeals. On facts even more favorable to the Government, the Federal Circuit considered this same issue with respect to a taxpayer engaged in the manufacture and production of taxidermy supplies and held capital was not a material income-producing factor. *United States v. Van Dyke*, 696 F.2d 957 (Fed. Cir. 1982), affg. an unreported case (Ct. Cl. Trial Div. 1982, 49 AFTR 2d 82–556, 82–1 USTC par. 9156).[7] His operation was nearly twice the size of petitioner's. I see no basis, as the majority does, for distinguishing this case. Indeed, respondent does not attempt to distinguish the case. He argues *United States v. Van Dyke, supra*, was decided incorrectly.

Although it recognizes petitioner's efforts played a vital role in his business, the majority effectively pays lip service to this role. Instead, it focuses on the fact that petitioner operates a "manufacturing" concern, that he sells a product and not services, and that the cost of raw materials is significant. Without so stating, the majority excludes the benefits of section 1348 from anyone who sells a product. The majority

---

[6]In later years, Congress further expressed its dissatisfaction with the limitations on earned income. The 30-percent limitation was removed for years after 1978 by Revenue Act of 1978, Pub. L. 95–600, sec. 442(a), 92 Stat. 2878. Finally, sec. 1348 was repealed for taxable years beginning after Dec. 31, 1981, when the highest marginal rate for all types of income was reduced from 70 percent to 50 percent. Economic Recovery Tax Act of 1981, Pub. L. 97–34, sec. 101(c)(1), 95 Stat. 183.

[7]In *United States v. Van Dyke*, 696 F.2d 957 (Fed. Cir. 1982), the taxpayer owned and operated a taxidermy supply business in which he produced and sold artificial eyes, forms, wood panels and plaques, and other supplies to both commercial and museum taxidermists. He employed over 20 people on a full-time or a part-time basis. Gross sales, expenses, and the cost of business assets were as follows:

|  | 1972 | 1973 |
|---|---|---|
| Gross sales | $713,917 | $866,039 |
| Materials | 162,496 | 222,630 |
| Labor | 180,516 | 218,577 |
| Cost of physical assets | 40,861 | 105,237 |

lays down an extremely difficult standard, and in my view, this inflexible view is unwarranted. The statute is not limited to net profits generated by commissions and fees of professionals; it extends to income generated by personal effort, skill, and labor even if it results from the production and sale of a tangible item. I cannot imagine capital would be deemed a material income-producing factor in the production of an oriental rug through hours and hours of manual labor even though the rug is sold as the final product or there is a substantial cost of wool incorporated into the product.

I, too, have serious doubts many production concerns can qualify. But I cannot rule out all of them, and this happens to be one I cannot rule out. This case is unusual in that, even though petitioner generated substantial net profits, he did so by using only a few tools. As this Court has stated, "Few modern businesses are conducted without the use of capital in some form or other, and it cannot be assumed that Congress intended such a narrow reading of the term 'capital' under section 1348." *Bruno v. Commissioner*, 71 T.C. 191, 201 (1978).

Congress has given us a general standard to apply, and we must draw the line on the particular facts of each case. As the majority points out, this "is a matter largely of approximation." Yet, the majority sets a standard, admittedly easier to apply, that goes too far. In my opinion, Congress did not intend such a far-reaching result, and I believe the record in this case supports a finding in favor of petitioner.

STERRETT, WILES, KÖRNER, and COHEN, *JJ.*, agree with this dissent.