MAX B. HERMAN AND PEARL HERMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Herman v. Commissioner
Docket No. 24369-81.
United States Tax Court
T.C. Memo 1985-396; 1985 Tax Ct. Memo LEXIS 229; 50 T.C.M. (CCH) 650; T.C.M. (RIA) 85396; August 7, 1985. Charles William Johnson, for the petitioners. Ronald D. Dalrymple, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in petitioners' income taxes for 1976 and 1977 in the respective amounts of $7,420 and $10,210. The only issue is whether under section 1348 [1] capital was a material income-producing factor in the motel business operated by petitioners. FINDINGS OF FACT Some of the facts have been stipulated and are so found. *230 The stipulations and exhibits attached thereto are incorporated herein by reference. Petitioners, Max B. and Pearl Herman, resided in Las Vegas, Nevada, at the time they filed their petition in this case. Their joint income tax returns for 1976 and 1977 were prepared using the cash receipts and disbursements method of accounting and were filed with the Internal Revenue Service Center at Ogden, Utah. On May 8, 1970 petitioners entered into a partnership agreement with four other individuals concerning the acquisition and operation of a business located in Las Vegas and known as the Jamaica Motel. The partnership acquired and continued to use the name. The other assets of the partnership included an amortizable leasehold interest in land with a cost basis to the partnership of $61,216; buildings and other depreciable improvements with a cost basis of $451,638; and depreciable furnishings and fixtures with a cost basis of $98,626. At the close of the taxable years 1976 and 1977, the partnership's basis in the leasehold interest and the depreciable improvements remained the same, while the basis of the depreciable furnishings and fixtures had increased to $139,195 in 1976 and $143,307 *231 in 1977. During the years under consideration the partnership made monthly lease payments in the amount of $2,666.66 and the Jamaica Motel, as a going concern, had a fair market value of between $2,000,000 and $2,500,000. At all relevant times petitioners owned a 46.666 percent interest in the partnership and managed the motel for which they received guaranteed payments pursuant to the partnership agreement. They also received their respective distributive share of the partnership profits. Both petitioners were involved in the daily operations of the motel but petitioner, Max B. Herman, was primarily responsible for its management because of his experience, skill, and ability in the industry. His responsibilities included all operational policies, such as the determination of (a) how many rooms were to be kept unreserved; (b) the price to be charged to a customer who did not have a reservation; and (c) room rate variations depending upon occupancy levels. Mr. Herman worked long hours and utilized creative and effective techniques to attract customers to the motel. Under his guidance, the revenues of the motel increased from $13,561 in 1970, when the motel had just been reopened *232 after being forced to cease operations in an earlier year, to $281,266 in 1977. On their joint returns for 1976 and 1977 petitioners treated all income received from the partnership as earned income for the purpose of computing their maximum tax liability. In his statutory notice respondent determined that capital was a material income-producing factor in the production of the partnership income and, therefore, limited petitioners' earned income from the partnership for the maximum tax computation to 30 percent. OPINION The sole issue for decision is whether capital was a material income-producing factor in the business of the Jamaica Motel within the meaning of section 1348.Petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). For the years in issue, section 1348(b)(1) adopted the definition of earned income contained in section 911(b) for the purpose of making the maximum tax computation. Section 911(b) stated in part that: For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered * * *. In *233 the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. This definition was amplified by section 1.1348-3(a)(3)(ii), Income Tax Regs., as follows: Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will *234 not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. The regulation has been reviewed with approval by this Court on several occasions. See Moore v. Commissioner,71 T.C. 533 (1979) and Bruno v. Commissioner,71 T.C. 191 (1978). See also Holland v. Commissioner,70 T.C. 1046 (1978), affd. 622 F.2d 95 (4th Cir. 1980) and Rousku v. Commissioner,56 T.C. 548 (1971). In the case before us, the acquisition in 1970 of the Jamaica Motel by the partnership required an investment in excess of $600,000 in an amortizable leasehold in land, buildings, furniture and fixtures. By the end of the years at issue, the partnership's investment in these items had increased to $656,161. We have repeatedly held that investments in land, buildings, furniture and fixtures are material income-producing factors *235 in the production of income in a trade or business. Gaudern v. Commissioner,77 T.C. 1305 (1981); Moore v. Commissioner,71 T.C. 533 (1979); Rousku v. Commissioner,56 T.C. 548 (1971); Fairfax Mutual WoddProducts Co. v. Commissioner,5 T.C. 1279 (1945); Novikoff v.Commissioner,T.C. Memo. 1980-330. In addition to its investment the partnership was also required to make monthly lease payments of $2,666.66 for the land upon which the building is located. In Moore v. Commissioner,supra, we held that such lease payments were material income-producing factors in a retail grocery business. Our case is almost identical in this respect to Moore and cannot be factually distinguished. Petitioners' only contention is that the success of the Jamaica Motel was due to the admittedly extensive management expertise of petitioners.Similar arguments have been advanced and rejected on other occasions. In Gaudern v.Commissioner,77 T.C. 1305, 1310 (1981), we stated: The impressive success of Western Columbia [sale of bowling balls] was no doubt due to *236 the extensive personal services furnished by the petitioner. He worked long hours, and he made use of the many contacts which he had established during his career as a professional bowler. It appears than his conduct of the business reflects considerable ingenuity, industry, and business acumen on his part. In addition, he did receive an annual payment from CII for the services which he performed for that company, and his pro shop received some small income for the services that it performed in engraving trophies and drilling bowling balls. Nevertheless, the fact that the petitioner contributed material personal services to the operation of the business does not entitle him to treat the entire profits as earned income under section 1348; if capital was a material income-producing factor, he is subject to the 30-percent limitation, notwithstanding the importance of his personal services. See also Moore v. Commissioner,71 T.C. 533 (1979); Novikoff v.Commissioner,T.C. Memo. 1980-330; Weiss v. United States, an unreported case ( N.D. Ohio 1978, 78-2 USTC P9734, 42 AFTR 2d 78-6027); United States v. Korczynski, an unreported *237 case ( S.D. Ohio 1978, 78-2 USTC P9638, 42 AFTR 2d 78-5799). Again in Wilson v.Commissioner,T.C. Memo. 1982-289, affd. in an unpublished opinion (10th Cir. 1983), it was stated: We wholeheartedly agree with petitioner when he states that he earned every penny of his net income from farming in a moral sense. He invested long hours of backbreaking work, often in the formidable stench of chicken manure. A very high proportion of the farm's gross income--perhaps 80 to 90 percent--was undoubtedly the result of petitioner's efforts. And yet, since capital was also a material income-producing factor, the law in effect at the time restricted maximum tax treatment to 30 percent of net income. To redress the unfairness which resulted from situations like the instant case, Congress eliminated the restriction in section 442(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2878. Unfortunately for the petitioners, the changes were effective only for taxable years beginning after 1978. [43 T.C.M. 1474, 1476, 51 P-H Memo T.C. par. 82,289, at 1212-82. Fn. refs. omitted.] We are satisfied that petitioners' services, as motel mangers *238 and operators, constituted a material income-producing factor in this case. However, the gross income of the business came entirely from room rentals and the portion of such rentals which is attributable to petitioners' personal services cannot be separated from that portion of such rentals which is attributable to the capital invested by the partnership in the land, building, furniture and fixtures and the monthly payment on the lease. All such factors materially contributed to the income of the motel; and under the law as it existed in 1976 and 1977, the fact that petitioners' operation was highly efficient and profitable does not distinguish it from any other motel that must also utilize capital. See Friedlander v. United States,718 F.2d 294 (9th Cir. 1983); Moore v. Commissioner,71 T.C. 533 (1979); Novikoff v.Commissioner,T.C. Memo. 1980-330. Decision will be enteredfor respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩