BERT JUNIOR WILSON AND DELORES J. WILSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wilson v. Commissioner
Docket No. 3991-80.
United States Tax Court
T.C. Memo 1982-289; 1982 Tax Ct. Memo LEXIS 463; 43 T.C.M. (CCH) 1474; T.C.M. (RIA) 82289; May 24, 1982. Bert Junior Wilson, pro se. Cynthia J. Olson, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined the following deficiencies in petitioners' Federal income tax: Taxable Year
Deficiency
1976
$ 13,460.60
1977
30,302.00
Due to concessions, the only issue before us is whether capital was a material income-producing factor in petitioners' egg-producing business during the taxable years in issue. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. At the time they filed their petition herein, petitioners resided in Solomon, Kansas. Petitioner Bert *464 Wilson (hereinafter referred to as "petitioner") has engaged in the chicken-raising and egg-producing business since 1946. During the years in issue, he operated a 557-acre farm near Solomon, Kansas, producing and selling livestock, poultry, eggs, grain, and hay. Petitioner's gross profits from these various sources, the amount of depreciation which he claimed on firm assets, and his net income from farming were as follows: Gross Profit
Item
1976
1977
Sale of Livestock Purchased for Resale
$ 782.00
$ 1,986.00
Sale of Poultry
17,630.00
10,965.00
Sale of Eggs, Wholesale
951,892.00
650,451.00
Sale of Grain
2,542.00
2,011.00
Sale of Eggs, Retail
3,558.00
5,289.00
Pop Machine
1,699.00
1,375.00
Sale of Hay
100.00
Machine Work
212.00
Patronage Dividends
703.00
644.00
Agricultural Program Payments
4,908.00
Other
16,400.00
15,755.00
Total Gross Profit
$ 995,518.00
$ 693,384.00
Depreciation Claimed
$ 30,947.00
$ 33,589.00
Net Income From Farming
$ 195,733.00
$ 239,359.00
Prior to and including the years in issue, petitioner made investments in equipment, structures, and machinery in connection with the operation of his farm. *465 Petitioner's major farm activity was raising chickens to "laying age" (i.e., the age when they become capable of producing eggs) and collecting and processing the eggs which they laid. The birds were kept in "chicken houses," large structures of tin and wood. Petitioner used a significant amount of equipment to maintain the chickens' health. For example, ventilators kept the hens cool and removed foul air; automatic feed grinders ground and mixed various grains into chicken feed according to formulas which petitioner developed. The egg-producing operation was highly automated, using expensive machinery to speed the eggs from the hens to the egg crates. Petitioner purchased a "semi" (a large tractor-trailor rig) for over $ 30,000 and used it to haul the crated eggs to market. Petitioner used almost all of the grain he raised to feed the chickens. The success of his egg operation was due in part to the feed-mixing formulas which he developed. The total cost-basis of assets on which petitioners claimed depreciation during 1976 and 1977, and the cost of the land used by the chicken farm, were as follows: Cost Basis of Assets on
Year
which Depreciation Claimed
Cost of Land
Total
1976
$438,683.86
$ 11,140.95
$ 449,824.81
1977
360,360.76
11,140.95
371,501.71
*466 Petitioner built the chicken houses himself along with some students who helped him after school. He purchased the materials by the boxcar load at the cheapest possible price. As a result, the actual cost per unit of chicken capacity was far less than average for an operation of this type. The success of petitioner's business was due to the tremendous amount of personal efforts which he invested in it. If ever a chicken enterprise of this size could qualify as a one-man operation, petitioner's could. He spent from twelve to eighteen hours per day performing all of the laborious and often noisome tasks needed to maintain production. He built the chicken houses himself, as noted above. He did all of the carpentry, plumbing, and electrical work, and most of the maintenance. He hauled the eggs to market and raised, ground, and mixed his own feed. He took no vacations or even 15-minute "coffee" breaks. He had trouble hiring competent employees and consequently often had to do the work of two people on the processing line. He had to pump out the large quantities of chicken manure which collected under the cages. The smell was unbelievable. The chickens consumed all of petitioner's *467 time and energy; he unfortunately had none left for his family. As a result, he is now divorced. On their 1976 and 1977 Federal income tax returns, petitioners treated all of their net income from farming as earned income (i.e., "personal service income") for purposes of the maximum tax provisions of section 1348. [1] The Commissioner determined that because capital was a material income-producing factor in petitioners' chicken business, only 30 percent of their net income therefrom could be treated as earned income. When the revenue agents informed petitioner of their position upon auditing his return, he promptly shut down the chicken operation. It is now producing no income. OPINION As applicable to the years in issue, section 1348 provided that earned income would, in effect, be taxed at more than a 50-percent rate. "Earned income" was defined as "any income which is earned income within the meaning of * * * section 911(b) * * *." Section 911(b) provided as follows: (b) DEFINITION OF EARNED INCOME.--For purposes of this section, the term "earned income" *468 means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. Section 1.1348-3(a)(3)(ii) of the Income Tax Regs. provided as follows: (ii) Whether capital is a material income-producing factor must be determined by reference to all of the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, *469 by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his professional by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. If we find that capital was a material income-producing factor in petitioners' chicken business, only 30 percent of their net income therefrom was eligible for the maximum tax benefit. This case bears striking similarities to Moore v. Commissioner,71 T.C. 533 (1979), in which taxpayers operated a retail grocery. Capital used in the operation of the store included inventory and depreciable assets of substantial *470 book value and a building for which taxpayers paid a substantial rental. The store was run very efficiently. Inventory purchases were tightly controlled to maximize turnover. Labor expenses were minimized by efficient operation and by extensive services performed directly by petitioners. As a result, the store was much more profitable than other comparable stores. We stated in Moore that capital is a material incomeproducing factor if the operation of the business requires substantial inventories or substantial investments in plant, machinery, or other equipment. Under this test, we found that "a retailing business selling its inventory of groceries necessarily employs capital as a material income-producing factor." Acknowleding that "petitioners' services were substantial and important in preparing and presenting the store's inventory for retail sale," we nevertheless concluded that a substantial portion of the store's gross income was attributable to the use of capital in the form of the substantial value of inventory, depreciable assets and leased real estate. Moore v. Commissioner,supra at 539. In the instant case, the petitioner employed a *471 very substantial amount of assets in his egg-producing business, without which it could not have operated. Chicken houses and cages were needed to house the laying hens; ventilators, automatic feed grinders, and manure pumps were needed to maintain their health. The egg processing required much automated equipment. The chickens themselves were perhaps the most valuable asset of the operation. A large "semi" was required to haul the eggs to market. The total book value of assets used in the chicken business on which petitioners claimed depreciation and of the farmland was $ 449,824.81 in 1976 and $ 371,501.71 in 1977. We have used these assets because the depreciation schedules attached to petitioners' returns list assets acquired since 1949, many of which are completely depreciated and may not have been used during 1976 and 1977, although undoubtedly some were. Thus, these figures tend to understate the total book value of assets actually employed on the chicken farm during this period. Such amounts are obviously substantial, and the assets which they represent were essential to the operation of the chicken farm. The assets were therefore a material income-producing factor. *472 We wholeheartedly agree with petitioner when he states that he earned every penny of his net income from farming in a moral sense.He invested long hours of backbreaking work, often in the formidable stench of chicken manure. A very high proportion of the farm's gross income--perhaps 80 to 90 percent--was undoubtedly the result of petitioner's efforts. And yet, since capital was also a material income-producing factor, the law in effect at the time restricted maximum tax treatment to 30 percent of net income. To redress the unfairness which resulted from situations like the instant case, Congress eliminated the restriction in section 442(a) [2] of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2878. Unfortunately for the petitioners, the changes were effective only for taxable years beginning after 1978. [3]
To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are, unless otherwise specified, to the Internal Revenue Code of 1954, as amended.↩
2. S. Rept. 95-1263, 95th Cong., 2d Sess. (1978), 1978-3 C.B. (Part 1) 321, 506. ↩
3. Sec. 1348 was repealed by the Economic Recovery Tax Act of 1981, Pub. L. 97-34, 95 Stat. 172, as to the years beginning after 1981.↩