JAMES J. PARKER AND ROSEMARIE PARKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Parker v. Commissioner
Docket No. 24368-81.
United States Tax Court
T.C. Memo 1985-545; 1985 Tax Ct. Memo LEXIS 85; 50 T.C.M. (CCH) 1349; T.C.M. (RIA) 85545; October 30, 1985. Charles W. Johnson, for the petitioners. Ronald D. Dalrymple, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined deficiencies in income tax due from petitioners for the years 1977 and 1978 in the respective amounts of $60,557 and $21,505. The only issue is whether the net profits of petitioners for 1977 and 1978 constitute "personal service income" within the meaning of section 1348. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and the *87 exhibits attached thereto are incorporated herein by reference. At the time of the filing of their petition, James J. Parker and Rosemarie Parker resided in Las Vegas, Nevada. They filed joint income tax returns for the calendar years 1977 and 1978 with the Internal Revenue Service at Ogden, Utah. All references herein to petitioner in the singular shall refer to James J. Parker. During the years 1977 and 1978, petitioner owned and operated a sole proprietorship in Las Vegas, which assembled dollar slot machines that were placed in the Lady Luck Casino (Lady Luck) and the Golden Gate Casino (Golden Gate). Petitioner's dollar slot machine was unique for its time. All of its internal parts were designed by petitioner. Many of the parts were made by him but a majority of the parts were manufactured by a machine shop pursuant to his specifications. Furthermore, the cabinets housing the slots including the etched glass exteriors were made to his order by independent contractors. With the various parts petitioner assembled the finished machines and placed them in Lady Luck and Golden Gate under two different agreements. Those placed in Lady Luck were subject to a written lease *88 agreement under which petitioner received $100 per week per machine. Those placed in Golden Gate were subject to a verbal participation agreement under which the proceeds from the machines were divided 60 percent to Golden Gate and 40 percent to petitioner. Under both agreements, petitioner was required to service and maintain the machines in good working condition and to meet this obligation, he employed servicemen and maintained an inventory of parts as well as spare machines. Under the agreement with Golden Gate, petitioner was also required to provide 40 percent of the initial bank from which payouts were made. The initial bank was $500 per machine. The slot machines placed by petitioner in Lady Luck and Golden Gate had a total cost basis of $198,454 in 1977 and $238,982 in 1978 and had an adjusted basis of $190,667 and $163,196 at the end of 1977 and 1978, respectively. For the years 1977 and 1978, petitioner had gross receipts of $619,092 and $524,525 from the machines and claimed and was allowed by respondent business expenses totaling $172,829 and $191,544 for a net profit of $446,263 in 1977 and $332,981 in 1978. The business expenses included the cost of servicing *89 the machines which totaled $65,280 in 1977 and $96,153 in 1978, plus replacement parts and supplies in the respective amounts of $40,924 and $31,693. On their income tax returns, petitioners claimed that the entire net profit for each year was personal service net income within the meaning of section 1348 and therefore subject to a maximum tax rate of 50 percent. In his notice of deficiency, respondent determined that the amount of net profit subject to the maximum tax rate of 50 percent was limited to 30 percent of the net profit because capital was a material income-producing factor in the business of petitioners. OPINION Petitioners contend that their entire net earnings for 1977 and 1978 constituted "personal service income" within the meaning of section 1348 [2] as in effect during 1977 and 1978. On such issue, petitioners have the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). As then in effect, section 1348(a) prescribed a 50 percent maximum tax rate with respect to "personal service income." Section 1348(b)(1)(A) defined the term "personal service income" to include any income which was "earned income" within the meaning of *90 section 401(c)(2)(C) or section 911(b). *91 Section 401(c)(2)(C) as it was in effect in 1977 and 1978 defined the term "earned income" to include "net earnings derived from the sale or other disposition of, the transfer of any interest in, or the licensing of the use of property (other than good will) by an individual whose personal efforts created such property." (Emphasis added.) Section 401(c)(2)(C) was intended to encompass the income of a self-employed individual which directly resulted from the individual's efforts; for example, the income of a writer, an artist or an inventor. See S. Rept. 1707, 89th Cong., 2d Sess. (1966), 1966-2 C.B. 1059, 1103 (1966). However, if property is not created solely from an individual's efforts but is created solely, or in part, from the efforts of this employees, then the individual's net profits from the property are not "earned income" within section 401(c)(2)(C). See Van Kalker v. Commissioner,81 T.C. 91, 93 n. 3 (1983), revd. on other grounds     F.2d     (7th Cir. 1984, 54 AFTR 2d 5671, 84-2 USTC par. 9727); Van Dyke v. United States, an unreported case (Ct. Cl. Trial Div. 1982), 49 AFTR 2d 82-556, 82-1 USTC par. 9156, *92 affd. 696 F.2d 957 (Fed. Cir. 1982). In this case, petitioner's gross receipts came from the use of the completed slot machines, not from the sale or other disposition of, the transfer, or licensing of his plans or designs for the machines. In this connection it should be noted that the cabinet housings, the etched glass exteriors and a majority of the internal parts of the slot machines were made by independent contractors. Consequently, while the design of the machines and the assembly of the components into the completed machines were the direct result of petitioner's personal efforts, it cannot be said that petitioner's "personal efforts created" the machines. In this regard, we are unable to distinguish between property created through the joint efforts of an individual and employees under his supervision from property created through the joint efforts of an individual and independent contractors who are making component parts pursuant to his specifications. We conclude, therefore, that petitioner's net profits are not "earned income" under section 401(c)(2)(C). Petitioners also rely on the definition of "earned income" as set forth in section 911(b) which *93 states: For purposes of this section, the term "earned income means wages, salaries, or professional fees and other amounts received as compensation for personal services actually rendered * * *. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. Section 911(b) was amplified by section 1.1348-3(a)(3)(ii), Income Tax Regs., as follows: Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists *94 principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he conducts his practice since his capital investment is regarded as only incidental to his professional practice. [Emphasis added.] The above regulation has received judicial approval on several occasions. See Moore v. Commissioner,71 T.C. 533 (1979) and Bruno v. Commissioner,71 T.C. 191 (1978). See also Holland v. Commissioner,70 T.C. 1046 (1978), affd. 622 F.2d 95 (4th Cir. 1980); Rousku v. Commissioner,56 T.C. 548 (1971). It is also well settled that in applying the section and the regulation, the question of whether capital is a "material income-producing factor" is a factual inquiry which must be determined from all of the facts and *95 circumstances of the particular case. Bruno v. Commissioner,supra;Rousku v. Commissioner,56 T.C. at 550. Petitioner's proprietorship obviously employed a significant amount of capital. His cost basis in the slot machines was $198,454 in 1977 and $238,982 in 1978. We have repeatedly held that a taxpayer's investment in equipment and other business assets in an element to be considered in determining whether capital is a material income-producing factor in a trade or business. Gaudern v. Commissioner,77 T.C. 1305 (1981); Moore v. Commissioner,71 T.C. 533 (1979); Rousku v. Commissioner,56 T.C. 548 (1971); Fairfax Mutual Wood Products Co. v. Commissioner,5 T.C. 1279 (1945). During 1977 and 1978 petitioner also expended $40,924 and $31,693 for replacement parts and supplies for the machines and $65,280 and $96,153 to service them. [3] Such expenditures also constitute a utilization of capital and must be considered in determining whether capital is a material income-producing factor. See Friedlander v. United States,718 F.2d 294 (9th Cir. 1983); Moore v. Commissioner,71 T.C. 533 (1979); *96 Bruno v. Commissioner,71 T.C. 191 (1978). By the use of "earned income" in section 911(b), "Congress meant income derived from labor, broadly defined, to be earned income and income derived from the use of property not to be earned income for the purpose of § 911." Robida v. Commissioner,460 F.2d 1172, 1175 (9th Cir. 1972), affg. T.C. Memo. 1970-86. Furthermore, we have stated: "The purpose of the test under section 1348 is to determine whether the income is attributable to the personal services of the taxpayer or whether such income was earned by capital * * *." Gaudern v. Commissioner,77 T.C. 1305, 1312 (1981). *97 Petitioner was not a mere purveyor of services and his business receipts did not consist "principally of fees, commissions, or other compensation" as provided in section 1.1348-3(a)(3)(ii), Income Tax Regs., but represented amounts paid by Lady Luck and Golden Gate for the use of his dollar slot machines. As such, the receipts obviously represented to some extent a return on the substantial amounts of capital employed by petitioner in the production, assembly, service and maintenance of the slot machines. Petitioner contends that his personal effort and skill in designing and creating certain components and in assembling the slot machines is directly responsible for the income earned by his sole proprietorship. We have considered and rejected similar arguments in the past. In Gaudern v. Commissioner,77 T.C. 1305, 1310 (1981), we stated: The impressive success of Western Columbia [sale of bowling balls] was no doubt due to the extensive personal services furnished by the petitioner. He worked long hours and he made use of the many contacts which he had established during his career as a professional bowler. It appears that his conduct of the business reflects *98 considerable ingenuity, industry and business acumen on his part. In addition, he did receive an annual payment from CII for the services which he performed for that company, and his pro shop received some small income for the services that it performed in engraving trophies and drilling bowling balls. Nevertheless, the fact that the petitioner contributed material personal services to the operation of the business does not entitle him to treat the entire profits as earned income under section 1348; if capital was a material income-producing factor, he is subject to the 30 percent limitation, notwithstanding the importance of his personal services. * * * See also Moore v. Commissioner,71 T.C. 533 (1979); Novikoff v. Commissioner,T.C. Memo. 1980-330.In Wilson v. Commissioner,T.C. Memo. 1982-289, affd. in an unpublished opinion (10th Cir. 1983), it was stated: We wholeheartedly agree with petitioner when he states that he earned every penny of his net income from farming in a moral sense. He invested long hours of backbreaking work, often in the formidable stench of chicken manure. A very high proportion of the farm's gross *99 income--perhaps 80 to 90 percent--was undoubtedly the result of petitioner's efforts. And yet, since capital was also a material income-producing factor, the law in effect at the time restricted maximum tax treatment to 30 percent of net income. To redress the unfairness which resulted from situations like the instant case, Congress eliminated the restriction in section 442(a) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2763, 2878. Unfortunately for the petitioners, the changes were effective only for taxable years beginning after 1978. [43 T.C.M. 1474, 1476, 51 P-H Memo T.C. par. 82,289, at 1212-82. Fn. ref. omitted.] We are satisfied that in this case petitioner's services, as the designer and assembler of the slot machines, constituted a material income-producing factor. However, the portion of the gross income which is attributable to petitioner's personal services cannot be separated from the portion of the gross income which is attributable to the capital invested in the slot machines and employed in their service and maintenance. Since such capital obviously contributed materially to the net income of petitioner, such net income does not constitute *100 earned income under section 911(b) and personal service income under section 1348(b). [4]
Decision will be entered for respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided.↩
2. Section 1348 provided in pertinent part: (a) General Rule.--If for any taxable year an individual has personal service taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall * * * be the sum of-- (1) the tax imposed by section 1 on the highest amount of taxable income on which the rate of tax does not exceed 50 percent, (2) 50 percent of the amount by which his personal service taxable income exceeds the amount of taxable income specified in paragraph (1) of this subsection, and (3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his personal service taxable income. (b) Definitions.--For purposes of this section-- (1) Personal service income.-- (A) In general.--The term "personal service income" means any income which is earned income within the meaning of section 401(c)(2)(C) or section 911(b) * * *. * * * (2) Personal service taxable income.--The personal service taxable income of an individual is the excess of-- (A) the amount which bears the same ratio (but not in excess of 100 percent) to his taxable income as his personal service net income bears to his adjusted gross income, over (B) the sum of the items of tax preference (as defined in section 57) for the taxable year. For purposes of subparagraph (A), the term "personal service net income" means personal service income reduced by any deductions allowable under section 62 which are properly allocable to or chargeable against such earned income.↩
3. The concept of capital as a material income-producing factor is not unique to section 911 but is analogous to other provisions. One of these provisions is section 704(e). When examining this section in the past, we have stated: "The need for liquid assets to defray current operating expenses may be a factor in determining the materiality of capital as an income-producing factor." Ketter v. Commissioner,70 T.C. 637, 645 (1978), affd. without published opinion 605 F.2d 1209↩ (8th Cir. 1979).
4. Since we have decided that petitioners' net profits do not constitute earned income under section 401(c)(2)(C) and that section 911(b) limits the amount of petitioners' net profits available for maximum tax benefits to 30 percent, we do not examine the issue raised by respondent of whether the income derived from Golden Gate is gambling income excluded from section 1348. This issue was raised by respondent at trial to support respondent's determination that only 30 percent of petitioner's net income was "earned income" within section 1348. The issue was not raised for purposes of seeking an increased deficiency.↩