**James J. PARKER and Rosemarie Parker, Petitioners-Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

No. 86–7045.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 10, 1986.

Decided July 22, 1987.

Charles W. Johnson, Las Vegas, Nev., for petitioners-appellants.

Roger M. Olsen, Michael L. Paup, Richard Farber, Robert S. Parish, Jr. and Nancy Morgan, Washington, D.C., for respondent-appellee.

Before NORRIS, BEEZER and BRUNETTI, Circuit Judges.

BRUNETTI, Circuit Judge:

## FACTS

The individual taxpayer designed and built dollar slot machines. He leased some of them to the Lady Luck casino and received fixed periodic payments. He also placed some of the machines in the Golden Gate casino and signed a "participation agreement" under which he received 40% of the net profits produced by his machines. Under both agreements, the taxpayer was required to service, maintain, modify, and update the machines.

The taxpayer designed all of the component parts. He built some of the components and hired a machine shop to fabricate others.

On his 1977 and 1978 income tax returns, the taxpayer claimed that the entire net profit from the slots was personal service net income within the meaning of I.R.C. § 1348 and was therefore subject to a maximum tax rate of 50% on that income. The commissioner determined that the amount of net profit subject to the maximum tax rate was limited to 30% of the net profit because capital was a material income-producing factor in the taxpayer's business.

In the Tax Court, Parker argued that his net profits were "earned income" under I.R.C. § 401(c)(2)(C) or § 911(b). The court held that the taxpayer did not qualify under § 401(c)(2)(C) because independent contractors fabricated some of the component parts of the machine. The court also held § 911(b) inapplicable because capital was a material factor in the production of the income. *See Parker v. Commissioner.*, TC MEMO 1985–545, 50 T.C.M. 1349 (CCH) (1985).

## ANALYSIS

This appeal presents the issue whether income from the design, production, and utilization of the slot machines is "earned income" within the meaning of § 1348. Section 1348(b)(1)(A) provides that "earned income" "means any income which is earned income within the meaning of § 401(c)(2)(C) or § 911(b)." [1] We consider each of these sections separately.

### A. *Section 401(c)(2)(C)*

This appeal involves the application of § 401 to a set of undisputed facts: the issue is whether the section applies where some fabrication is completed by an independent contractor. We review the Tax Court's legal interpretation of § 401 de novo. Although we disagree with portions of the Tax Court's analysis, we agree that § 401(c)(2)(C) is inapplicable in this case.

■ In order to claim the benefit of § 401(c)(2)(C), a taxpayer need not demonstrate that his or her personal efforts *alone* created the property in question. Nowhere in § 401(c)(2)(C) is such an exclusivity requirement stated. The subsection merely states that it is applicable to property derived "by an individual whose personal efforts created such property." Furthermore, the cases cited by the Tax Court do not require that property be created *solely* by the taxpayer's personal efforts in order to constitute "earned income." In *Van Kalker v. Commissioner*, for example, the court merely held that property actually created by the individual's employees is not created by the individual's personal efforts. 81 T.C. 91, 93 n. 3 (citing *Van Dyke v. United States*, 82–1 USTC ¶ 9156, 49 AFTR2d 82–556 (Ct.Cl.1982), *aff'd*, 696 F.2d 957 (Fed.Cir.1982)), *reversed on other grounds*, 804 F.2d 967 (7th Cir.1984).

■ It does not make sense to imply an exclusivity requirement into § 401(c)(2)(C). In our modern economy individuals rarely create anything *solely* through their personal efforts. Given the legislative history, authors do not forgo their right to treat the proceeds from a literary work as "earned income" simply because they hire typists to type the manuscript or because they pay others to manufacture the typing paper. *See* S.Rep. No. 1707, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 4446, 4507–09. Labor performed by others in that case is really incidental to the real "product" of the individual, the words of the manuscript. Authors, artists, and inventors have a sufficient personal involvement in the creation of their books, paintings, and inventions to qualify under § 401, but a person who designs a product and then supervises the manufacture of that product by a factory of workers does not. *See Van Dyke, supra* (taxidermy supplies); *Van Kalker, supra* at n. 3 (ornamental ironwork).

■ Applying this principle to the facts in this case, we conclude that, although Mr. Parker has shown a great degree of per-

---

1. Under former § 1348, a taxpayer's personal service income is subject to a maximum marginal tax rate of 50%. Section 1348 has been repealed for taxable years beginning after December 31, 1981. *See* Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172, § 101(c)(1).

sonal involvement in the creation of his slot machines, he has not shown enough to have the income from the slot machines treated as earned income under § 401(c)(2)(C). Mr. Parker performed the design and final assembly of the slot machines and made some of the parts himself. But a majority of the parts were manufactured by a machine shop pursuant to his specifications. Furthermore, the cabinets housing the slots including the etched glass exteriors were made to his order by independent contractors.

### B. *Section 911(b)*

■ The law is clear that only 30% of income is deemed "earned income" under § 911(b) where capital is a material income-producing factor (MIPF).[2] We review the Tax Court's finding that capital is a MIPF under the clearly erroneous standard. The Tax Court's § 911(b) ruling is based on undisputed facts. But where, as here, the "application of law to facts requires an inquiry that is 'essentially factual' ", the clearly erroneous standard applies. *Enrici v. Commissioner*, 813 F.2d 293, 295 (9th Cir.1987) (citing *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984)). Moreover, the clearly erroneous standard governs even though the finding that capital is a MIPF was inferred from undisputed basic facts because the inference is still essentially factual. *Id.* (citing *Commissioner v. Duberstein*, 363 U.S. 278, 291, 80 S.Ct. 1190, 1199, 4 L.Ed.2d 1218 (1960)).

■ The fact that the taxpayer's efforts result, in part, in the creation of capital goods is inconsequential: whether capital is a material income-producing factor depends on the factors which produce the income, not on whether a tangible product results from the process. *See Van Kalker v. Commissioner*, 804 F.2d 967 at 969 (7th Cir.1984); *Cook v. United States*, 599 F.2d 400, 404 (Ct.Cl.1979). The relevant income-producing factors in this case include raw materials, the cash to bank the slots, and

the taxpayer's efforts in designing, producing, servicing and marketing the slot machines. Raw materials used in the production of the slots, including subassemblies provided by independent contractors, constitute both a necessary and substantial use of capital in the production of income. *See Treas.Reg.* § 1.1348–3(a)(3)(ii). Based on our examination of all of these income-producing factors, we conclude that the Tax Court's finding that capital is a material income-producing factor in the production of the taxpayer's income from the rental and servicing of the slot machines is not clearly erroneous.

For the foregoing reasons, the decision of the Tax Court is affirmed.

AFFIRMED.

---

**2.** The 30% limitation has been repealed for taxable years beginning after December 31, 1978.

*See* Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, § 442(a).